BARCLAY *v.* FLORIDA

No. 81–6908.   Argued March 30, 1983—Decided July 6, 1983

*James M. Nabrit III* argued the cause for petitioner. With him on the brief were *Kenneth Vickers, Jack Greenberg, Joel Berger, John Charles Boger, Deborah Fins, James S. Liebman,* and *Anthony G. Amsterdam.*

*Wallace E. Allbritton,* Assistant Attorney General of Florida, argued the cause for respondent. With him on the brief was *Jim Smith,* Attorney General.

JUSTICE REHNQUIST announced the judgment of the Court and delivered an opinion, in which THE CHIEF JUSTICE, JUSTICE WHITE, and JUSTICE O'CONNOR joined.

The central question in this case is whether Florida may constitutionally impose the death penalty on petitioner

Elwood Barclay when one of the "aggravating circumstances" relied upon by the trial judge to support the sentence was not among those established by the Florida death penalty statute.

The facts, as found by the sentencing judge and quoted by the Florida Supreme Court, are as follows:

"[T]he four defendants were part of a group that termed itself the 'BLACK LIBERATION ARMY' (BLA), and whose apparent sole purpose was to indiscriminately kill white persons and to start a revolution and a racial war.

"The testimony showed that on the evening of June 17, 1974, Dougan, Barclay, Crittendon, Evans and William Hearn set out in a car armed with a twenty two caliber pistol and a knife with the intent to kill . . . any white person that they came upon under such advantageous circumstances that they could murder him, her or them.

"That as they drove around the City of Jacksonville they made several stops and observed white persons as possible victims, but decided that the circumstances were not advantageous and that they might be observed or thwarted . . . . At one stop, Dougan wrote out a note—which was to be placed on the body of the victim ultimately chosen for death.

"Eventually the five men headed for Jacksonville Beach where they picked up a hitch hiker, eighteen year old, Stephen Anthony Orlando. Against his will and over his protest they drove him to an isolated trash dump, ordered him out of the car, threw him down and Barclay repeatedly stabbed him with a knife. Dougan then put his foot on Orlando's head and shot him twice—once in the cheek and once in the ear—killing him instantly.

"The evidence showed that none of the defendants knew or had ever seen Orlando before they murdered

him.   The note, which Dougan had previously written, was stuck to Orlando's body by the knife of the murderers.   The note read:

"'Warning to the oppressive state.   No longer will your atrocities and brutalizing of black people be unpunished.   The black man is no longer asleep.   The revolution has begun and the oppressed will be victorious. The revolution will end when we are free.   The Black Revolutionary Army.   All power to the people.' . . .

.        .        .        .        .

"Subsequent to the murder the defendants Barclay and Dougan . . . made a number of tape recordings concerning the murder.   These recordings were mailed to the [victim's mother] and to radio and television stations. All of the tapes contained much the same in content and intent.   [The court then reproduced typical excerpts from transcripts of the tapes, which included the following:]

.        .        .        .        .

"'The reason Stephen was only shot twice in the head was because we had a jive pistol.   It only shot twice and then it jammed; you can tell it must have been made in America because it wasn't worth a shit.   He was stabbed in the back, in the chest and the stomach, ah, it was beautiful.   You should have seen it.   Ah, I enjoyed every minute of it.   I loved watching the blood gush from his eyes. . . .'

"'He died in style, though, begging, begging and pleading for mercy, just as black people did when you took them and hung them to the trees, burned their houses down, threw bombs in the same church that practices the same religion that you forced on these people, my people.

"'We are everywhere; you cannot hide from us.   You have told your people to get off the streets and to stay

home. That will not help, for one night they will come home and we will be there waiting. It has been said, look for us and you cannot see us; listen for us and you cannot hear us; feel for us and you cannot touch us. These are the characteristics of an urban guerilla.'" *Barclay* v. *State*, 343 So. 2d 1266, 1267–1269 (1977).

Barclay and Dougan were convicted by a jury of first-degree murder.[1] As required by the Florida death penalty statute, Fla. Stat. § 921.141(1) (1977), a separate sentencing hearing was held before the same jury. The jury rendered advisory sentences under § 921.141(2), recommending that Dougan be sentenced to death and, by a 7 to 5 vote, that Barclay be sentenced to life imprisonment. The trial judge, after receiving a presentence report, decided to sentence both men to death. He made written findings of fact concerning aggravating and mitigating circumstances as required by § 921.141(3). App. 1–53. The trial judge found that several of the aggravating circumstances set out in the statute were present. He found that Barclay had knowingly created a great risk of death to many persons, § 921.141(5)(c), had committed the murder while engaged in a kidnaping, § 921.141(5)(d), had endeavored to disrupt governmental functions and law enforcement, § 921.141(5)(g), and had been especially heinous, atrocious, or cruel. § 921.141(5)(h). See 343 So. 2d, at 1271.

The trial judge did not find any mitigating circumstances. He noted in particular that Barclay had an extensive criminal record, and therefore did not qualify for the mitigating circumstance of having no significant history of prior criminal activity. § 921.141(6)(a). He found that Barclay's record constituted an aggravating, rather than a mitigating, circumstance. 343 So. 2d, at 1270, and n. 2. The trial judge also

---

[1] Evans and Crittendon, who did not actually kill Orlando, were convicted of second-degree murder and sentenced to 199 years in prison. Hearn pleaded guilty to second-degree murder and testified for the prosecution.

noted that the aggravating circumstance of § 921.141(5)(a) ("The capital felony was committed by a convict under sentence of imprisonment") was not present, but restated Barclay's criminal record and again found it to be an aggravating circumstance. App. 33–34. He made a similar finding as to the aggravating circumstance of § 921.141(5)(b) ("The defendant was previously convicted of another capital felony or of a felony involving the use or threat of violence to the person"). Barclay had been convicted of breaking and entering with intent to commit the felony of grand larceny, but the trial judge did not know whether it involved the use or threat of violence. He pointed out that crimes such as this often involve the use or threat of violence, and stated that "there are more aggravating than mitigating circumstances." *Id.*, at 34–35.

The trial judge concluded that "[T]HERE ARE SUFFICIENT AND GREAT AGGRAVATING CIRCUM-STANCES WHICH EXIST TO JUSTIFY THE SEN-TENCE OF DEATH AS TO BOTH DEFENDANTS." *Id.*, at 48. He therefore rejected part of the jury's recommendation, and sentenced Barclay as well as Dougan to death.

On the automatic appeal provided by Fla. Stat. § 921.141 (4) (1977), the Florida Supreme Court affirmed. It approved the findings of the trial judge and his decision to reject the jury's recommendation that Barclay be sentenced to life imprisonment. It concluded that "[t]his is a case . . . where the jury did not act reasonably in the imposition of sentence, and the trial judge properly rejected one of their recommendations." 343 So. 2d, at 1271 (footnotes omitted).

This Court denied a petition for a writ of certiorari. 439 U. S. 892 (1978). However, the Florida Supreme Court later vacated its judgment, *sua sponte*, in light of our decision in *Gardner* v. *Florida*, 430 U. S. 349 (1977), and remanded to the trial court to give Barclay a full opportunity to rebut the information in the presentence report that was prepared for the trial judge. The trial court held a resentencing hearing, and reaffirmed the death sentence on the basis of

findings that are essentially identical to its original findings. App. 82–141. On appeal, the Florida Supreme Court again affirmed, holding that Barclay had not been denied any rights under *Gardner*. 411 So. 2d 1310 (1981). Rehearing was denied by an equally divided court. *Ibid.*

## I

Barclay has raised numerous objections to the trial judge's findings. The Florida courts declined to reconsider these arguments in the resentencing proceedings. The resentencing hearing was limited to ensuring that Barclay received all the rights to which he was entitled under *Gardner*. The Florida Supreme Court stated that it had "previously analyzed," 411 So. 2d, at 1311, Barclay's arguments, which were directed "against the findings previously reviewed here and affirmed," and declined to "abrogate the 'law of the case'" on these questions. *Id.*, at 1310. Since the Florida Supreme Court held that it had considered Barclay's claims in his first appeal, and simply refused to reconsider its previous decision in the second appeal, those claims are properly before us. *Reece* v. *Georgia*, 350 U. S. 85, 86–87 (1955).

## A

Barclay argues that the trial judge improperly found that his criminal record was an "aggravating circumstance." The State concedes that this is correct: Florida law plainly provides that a defendant's prior criminal record is not a proper "aggravating circumstance." *Mikenas* v. *State*, 367 So. 2d 606, 610 (Fla. 1978).

## B

Barclay also argues that the trial judge improperly found the "under sentence of imprisonment" and "previously been convicted of a [violent] felony" aggravating circumstances. The Florida Supreme Court, however, construed the trial judge's opinion as finding that these aggravating circumstances "essentially had no relevance here." 343 So. 2d, at

1271 (footnote omitted). We see no reason to disturb that conclusion. The trial judge plainly stated that Barclay "was not under sentence of imprisonment." App. 120. The trial judge also stated in the same paragraph that Barclay's criminal record "is an aggravating circumstance," *id.*, at 121, but this is simply a repetition of the error noted above.

Barclay also challenges the findings on several other aggravating circumstances. He claims that the trial court improperly found that he caused a great risk of death to many people,[2] that the murder was committed during a kidnaping, that the murder was committed to disrupt the lawful exercise of a governmental function or the enforcement of the laws,[3] and that the murder was especially heinous, atrocious, or cruel.[4] All of these findings were made by the trial court and approved by the Florida Supreme Court under Florida law. Our review of these findings is limited to the question whether they are so unprincipled or arbitrary as to somehow violate the United States Constitution. We think they were not. It was not irrational or arbitrary to apply these aggravating circumstances to the facts of this case.[5]

---

[2] The Florida Supreme Court stated:

"The trial judge noted five aborted attempts to select a victim from the streets of Jacksonville before Stephen Orlando was chosen, plus the taped threat made to white Jacksonville citizens that a race war had begun and none would be safe." 343 So. 2d, at 1271, n. 4.

[3] The Florida Supreme Court stated:

"The basis for this finding was the judge's observation that the notion of a race war essentially threatened the foundations of American society." *Id.*, at 1271, n. 5.

[4] The Florida Supreme Court noted that the tape recordings petitioner and Dougan made "explained how Stephen Orlando had begged for his life while being beaten and stabbed before Dougan 'executed' him with two pistol shots in the head." *Id.*, at 1271, n. 6.

[5] The differences between this case and *Godfrey* v. *Georgia*, 446 U. S. 420 (1980), are readily apparent. Godfrey killed his wife and his mother-in-law with a single shotgun blast each. Each died instantly. There was no torture or aggravated battery. The state court nonetheless found that

## C

Barclay also contends that his sentence must be vacated because the trial judge, in explaining his sentencing decision, discussed the racial motive for the murder and compared it with his own experiences in the Army in World War II, when he saw Nazi concentration camps and their victims.[6] Bar-

---

the murder was "outrageously or wantonly vile, horrible or inhuman in that it involved torture, depravity of mind, or an aggravated battery to the victim." Ga. Code § 27–2534.1(b)(7) (1978). It found no other aggravating circumstances. We concluded that, on the facts of the case, such a finding could only have resulted from a "standardless and unchannelled" decision based on "the uncontrolled discretion of a basically uninstructed jury." 446 U. S., at 429.

[6] The concluding sections of the trial judge's opinion read as follows:

### "CONCLUSION OF THE COURT

"THERE ARE SUFFICIENT AND GREAT AGGRAVATING CIRCUMSTANCES WHICH EXIST TO JUSTIFY THE SENTENCE OF DEATH AS TO THE DEFENDANT ELWOOD CLARK BARCLAY.

### "AUTHORITY FOR SENTENCE

"That under Florida Law the Judge sentences a defendant, convicted of Murder in the First Degree, either to death or life imprisonment. This is an awesome burden to be placed upon the Judge—but in the landmark Florida case of *State* v. *Dixon*, 283 So. 2d 1, the Florida Supreme Court said that when such discretion can 'be shown to be reasonable and controlled, rather than capricious and discriminatory,' then it meets the test of *Furman* v. *Georgia*, 408 U. S. 238.

### "COMMENTS OF JUDGE

"My twenty-eight years of legal experience have been almost exclusively in the field of Criminal Law. I have been a defense attorney in criminal cases, an Advisor to the Public Defender's Office, a prosecutor for eight and one-half years and a Criminal Court and Circuit Court Judge—Felony Division—for almost ten years. During these twenty-eight years I have defended, prosecuted and held trial in almost every type of serious crime.

"Because of this extensive experience, I believe I have come to know and understand when, or when not, a crime is heinous, atrocious and cruel and deserving of the maximum possible sentence.

"My experience with the sordid, tragic and violent side of life has not been confined to the Courtroom. I, like so many American Combat Infantry Soldiers, walked the battlefields of Europe and saw the thousands of

clay claims that the trial judge improperly added a non-statutory aggravating circumstance of racial hatred and should not have considered his own experiences.

We reject this argument. The United States Constitution does not prohibit a trial judge from taking into account the elements of racial hatred in this murder. The judge in this case found Barclay's desire to start a race war relevant to several statutory aggravating factors.[7] The judge's discussion is neither irrational nor arbitrary. In particular, the comparison between this case and the Nazi concentration camps does not offend the United States Constitution. Such a comparison is not an inappropriate way of weighing the "especially heinous, atrocious, or cruel" statutory aggravating circumstance in an attempt to determine whether it warrants imposition of the death penalty.

---

dead American and German soldiers and I witnessed the concentration camps where innocent civilians and children were murdered in a war of racial and religious extermination.

"To attempt to initate such a race war in this country is too horrible to contemplate for both our black and white citizens. Such an attempt must be dealt with by just and swift legal process and when justified by a Jury verdict of guilty—then to terminate and remove permanently from society those who would choose to initiate this diabolical course.

"HAD THE DEFENDANT BEEN EXPOSED TO THE CARNAGE OF THE BATTLEFIELDS AND THE HORRORS OF THE CONCENTRATION CAMPS INSTEAD OF MOVIES, TELEVISION PROGRAMS AND REVOLUTIONARY TRACTS GLORIFYING VIOLENCE AND RACIAL STRIFE—THEN PERHAPS HIS THOUGHTS AND ACTIONS WOULD HAVE TAKEN A LESS VIOLENT COURSE.

"Having set forth my personal experiences above, it is understandable that I am not easily shocked or moved by tragedy—but this present murder and call for racial war is especially shocking and meets every definition of heinous, atrocious and cruel. The perpetrator thereby forfeits further right to life—for certainly his life is no more sacred than that of the innocent eighteen year old victim, Stephen Anthony Orlando." App. 135–139.

[7] The trial judge discussed this point in the course of finding the "great risk of death to many persons," "disrupt or hinder the lawful exercise of

Any sentencing decision calls for the exercise of judgment. It is neither possible nor desirable for a person to whom the State entrusts an important judgment to decide in a vacuum, as if he had no experiences. The thrust of our decisions on capital punishment has been that "'discretion must be suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action.'" *Zant* v. *Stephens,* 462 U. S. 862, 874 (1983), quoting *Gregg* v. *Georgia,* 428 U. S. 153, 189 (1976) (opinion of Stewart, POWELL, and STEVENS, JJ.). This very day we said in another capital case:

> "In returning a conviction, the jury must satisfy itself that the necessary elements of the particular crime have been proved beyond a reasonable doubt. In fixing a penalty, however, there is no similar 'central issue' from which the jury's attention may be diverted. Once the jury finds that the defendant falls within the legislatively defined category of persons eligible for the death penalty, as did respondent's jury in determining the truth of the alleged special circumstance, the jury then is free to consider a myriad of factors to determine whether death is the appropriate punishment." *California* v. *Ramos, post,* at 1008.

We have never suggested that the United States Constitution requires that the sentencing process should be transformed into a rigid and mechanical parsing of statutory aggravating factors. But to attempt to separate the sentencer's decision from his experiences would inevitably do precisely that. It is entirely fitting for the moral, factual, and legal judgment of judges and juries to play a meaningful role in sentencing. We expect that sentencers will exercise their discretion in their own way and to the best of their ability. As long as that discretion is guided in a constitutionally adequate way, see *Proffitt* v. *Florida,* 428 U. S. 242 (1976), and as long as the decision is not so wholly arbitrary as to

---

any governmental function or the enforcement of the laws," and "especially heinous, atrocious, or cruel" statutory aggravating circumstances.

offend the Constitution, the Eighth Amendment cannot and should not demand more.

## II

In this case the state courts have considered an aggravating factor that is not a proper aggravating circumstance under state law.[8]   Barclay argues that a system that permits this sort of consideration does not meet the standards established by this Court under the Eighth and Fourteenth Amendments for imposition of the death penalty.[9]   As in *Zant, supra,* at 884, the question whether Barclay's sentence must be vacated depends on the function of the finding of aggravating circumstances under Florida law and on the reason why this aggravating circumstance is invalid.[10]

---

[8] Barclay does not, and could not reasonably, contend that the United States Constitution forbids Florida to make the defendant's criminal record an aggravating circumstance.   Thus, this case is distinguishable from *Zant* v. *Stephens,* 462 U. S. 862 (1983), where one of the three aggravating circumstances found in Georgia state court was found to be invalid under the Federal Constitution.   Of course, a "'mere error of state law' is not a denial of due process." *Engle* v. *Isaac,* 456 U. S. 107, 121, n. 21 (1982), quoting *Gryger* v. *Burke,* 334 U. S. 728, 731 (1948).   Thus we need not apply the type of federal harmless-error analysis that was necessary in *Zant, supra,* at 884–889.

[9] Barclay does not contend that the Florida Supreme Court erred in applying the "law of the case" doctrine to this case.   His claim seems to be, rather, that the errors in this case were so egregious and the flaws in the Florida statute are so fundamental that his sentence cannot constitutionally be permitted to stand.   The Florida Supreme Court did not address Barclay's arguments in precisely the terms he now uses.   But, so far as we can tell from the record before us, Barclay did not make his arguments in the same terms on his first appeal.   We know from the Florida Supreme Court's opinion in the second appeal that it regarded these questions as having been decided in its first opinion.   See *supra,* at 946.   It appears, contrary to JUSTICE MARSHALL's assertion, *post,* at 989, that any fault, if fault there be, for failure to elaborate more fully on the relationship of this case to other Florida cases may well lie at the door of petitioner, and not the Supreme Court of Florida.

[10] We have, in some similar circumstances, certified a question to the State Supreme Court in order to ascertain as precisely as possible the state-law basis for a sentence.   See *Zant* v. *Stephens,* 456 U. S. 411, 416–417

## A

The Florida statute at issue in this case was upheld in *Proffitt* v. *Florida, supra.* The opinion of Justices Stewart, POWELL, and STEVENS described the mechanics of the statute as follows:

> "[I]f a defendant is found guilty of a capital offense, a separate evidentiary hearing is held before the trial judge and jury to determine his sentence. Evidence may be presented on any matter the judge deems relevant to sentencing and must include matters relating to certain legislatively specified aggravating and mitigating circumstances. Both the prosecution and the defense may present argument . . . .
>
> "At the conclusion of the hearing the jury is directed to consider '[w]hether sufficient mitigating circumstances exist . . . which outweigh the aggravating circumstances found to exist; and . . . [b]ased on these considerations, whether the defendant should be sentenced to life [imprisonment] or death.' §§ 921.141(2)(b) and (c) (Supp. 1976–1977). The jury's verdict is determined by majority vote. It is only advisory; the actual sentence is determined by the trial judge. The Florida Supreme Court has stated, however, that '[i]n order to sustain a sentence of death following a jury recommendation of

(1982). But that procedure would be inappropriate here. Unlike *Zant*, which was a habeas case that originated in the federal court system, this case has already been twice reviewed by the Supreme Court of Florida. On petitioner's second appeal the Supreme Court of Florida declined to address the questions he presents to this Court. Under these circumstances, certification to the Supreme Court of Florida would be little more than a pointed suggestion that it retreat from its "law of the case" position. While we may reverse or modify a state-court judgment which we find erroneously disposes of a federal question, we will not certify a question in these circumstances.

life, the facts suggesting a sentence of death should be so clear and convincing that virtually no reasonable person could differ.' *Tedder* v. *State*, 322 So. 2d 908, 910 (1975). . . .

"The trial judge is also directed to weigh the statutory aggravating and mitigating circumstances when he determines the sentence to be imposed on a defendant. The statute requires that if the trial court imposes a sentence of death, 'it shall set forth in writing its findings upon which the sentence of death is based as to the facts: (a) *[t]hat sufficient [statutory] aggravating circumstances exist . . .* and (b) *[t]hat there are insufficient [statutory]* [11] *mitigating circumstances . . . to outweigh the aggravating circumstances.*' § 921.141(3) (Supp. 1976–1977).

"The statute provides for automatic review by the Supreme Court of Florida of all cases in which a death sentence has been imposed. § 921.141(4) (Supp. 1976–1977). The law differs from that of Georgia in that it does not require the court to conduct any specific form of review. Since, however, the trial judge must justify the imposition of a death sentence with written findings, meaningful appellate review of each such sentence is made possible, and the Supreme Court of Florida, like

---

[11] In fact, even before this Court decided *Lockett* v. *Ohio*, 438 U. S. 586 (1978) (evidence at sentencing phase cannot be limited to statutory mitigating circumstances), the Florida Supreme Court had construed this statute to permit consideration of *any* mitigating circumstances. See *Songer* v. *State*, 365 So. 2d 696, 700 (Fla. 1978) (citing cases). The opinion of Stewart, POWELL, and STEVENS, JJ. explicitly recognized that § 921.141(5) does not include language limiting mitigating circumstances to those listed in the statute, but § 921.141(6) provides that "aggravating factors shall be limited to" the statutory aggravating circumstances. 428 U. S., at 250, n. 8. It is not clear from the opinion itself why the opinion inserted the word "statutory" in brackets when quoting § 921.141(b)(3).

its Georgia counterpart, considers its function to be to '[guarantee] that the [aggravating and mitigating] reasons present in one case will reach a similar result to that reached under similar circumstances in another case. . . . If a defendant is sentenced to die, this Court can review that case in light of the other decisions and determine whether or not the punishment is too great.' *State* v. *Dixon*, 283 So. 2d 1, 10 (1973)." 428 U. S., at 248–251 (footnotes omitted) (emphasis supplied).

Thus the Florida statute, like the Georgia statute at issue in *Zant* v. *Stephens*, 462 U. S. 862 (1983), requires the sentencer to find at least one valid statutory aggravating circumstance before the death penalty may even be considered,[12] and permits the trial court to admit any evidence that may be relevant to the proper sentence. Unlike the Georgia statute, however, Florida law requires the sentencer to balance statutory aggravating circumstances against all mitigating circumstances and does not permit nonstatutory aggravating circumstances to enter into this weighing process. *E. g.*, *Mikenas* v. *State*, 367 So. 2d 606 (Fla. 1978). The statute does not establish any special standard for this weighing process.

Although the Florida statute did not change significantly between *Proffitt* and the decision below,[13] the Florida Supreme Court has developed a body of case law in this area. One question that has arisen is whether defendants must be

---

[12] The language of the statute, which provides that the sentencer must determine whether "sufficient aggravating circumstances exist," § 921.141(3)(a), indicates that any single statutory aggravating circumstance may not be adequate to meet this standard if, in the circumstances of a particular case, it is not sufficiently weighty to justify the death penalty. We have not found a Florida case in which a defendant claimed that a single aggravating circumstance was not "sufficient" within the meaning of § 921.141(3)(a).

[13] The statute was amended in 1979, but the parties agree that the amended statute was not applied to Barclay.

resentenced when trial courts erroneously consider improper aggravating factors. If the trial court found that some mitigating circumstances exist, the case will generally be remanded for resentencing. *Elledge* v. *State*, 346 So. 2d 998, 1002–1003 (Fla. 1977). See, *e. g.*, *Moody* v. *State*, 418 So. 2d 989, 995 (Fla. 1982); *Riley* v. *State*, 366 So. 2d 19, 22 (Fla. 1978). If the trial court properly found that there are no mitigating circumstances, the Florida Supreme Court applies a harmless-error analysis. *Elledge*, *supra*, at 1002–1003. See, *e. g.*, *White* v. *State*, 403 So. 2d 331 (Fla. 1981); *Sireci* v. *State*, 399 So. 2d 964, 971 (Fla. 1981). In such a case, "a reversal of the death sentence would not necessarily be required," *Ferguson* v. *State*, 417 So. 2d 639, 646 (Fla. 1982), because the error might be harmless.

The Florida Supreme Court has not always found that consideration of improper aggravating factors is harmless, even when no mitigating circumstances exist. In *Lewis* v. *State*, 398 So. 2d 432 (Fla. 1981), for example, the defendant shot the victim once in the head through his bedroom window, killing him instantly. The jury recommended life imprisonment, but the trial judge sentenced Lewis to death, finding four aggravating circumstances and no mitigating circumstances. The Florida Supreme Court found that the evidence did not support three of the aggravating circumstances. It did find that the "under sentence of imprisonment" aggravating circumstance was properly applied because Lewis was on parole from a prison sentence when he committed the crime. On these facts, and with only this one relatively weak aggravating circumstance left standing, the Florida Supreme Court did not find harmless error, but rather remanded for resentencing.

The Florida Supreme Court has placed another check on the harmless-error analysis permitted by *Elledge*. When the jury has recommended life imprisonment, the trial judge may not impose a death sentence unless "the facts suggesting a sentence of death [are] so clear and convincing that virtu-

ally no reasonable person could differ." *Tedder* v. *State*, 322 So. 2d 908, 910 (1975). In *Williams* v. *State*, 386 So. 2d 538, 543 (1980), and *Dobbert* v. *State*, 375 So. 2d 1069, 1071 (1979), the Florida Supreme Court reversed the trial judges' findings of several aggravating circumstances. In each case at least one valid aggravating circumstance remained, and there were no mitigating circumstances. In each case, however, the Florida Supreme Court concluded that in the absence of the improperly found aggravating circumstances the *Tedder* test could not be met. Therefore it reduced the sentences to life imprisonment.

B

The trial judge's consideration of Barclay's criminal record as an aggravating circumstance was improper as a matter of state law: that record did not fall within the definition of any statutory aggravating circumstance, and Florida law prohibits consideration of nonstatutory aggravating circumstances. In this case, as in *Zant* v. *Stephens*, 462 U. S., at 887–888, nothing in the United States Constitution prohibited the trial court from considering Barclay's criminal record. The trial judge did not consider any constitutionally protected behavior to be an aggravating circumstance. See *id.*, at 884. And, again as in *Zant*, nothing in the Eighth Amendment or in Florida law prohibits the admission of the evidence of Barclay's criminal record. On the contrary, this evidence was properly introduced to prove that the mitigating circumstance of absence of a criminal record did not exist. This statutory aggravating circumstance "plausibly described aspects of the defendant's background that were properly before the [trial judge] and whose accuracy was unchallenged." *Id.*, at 887.

C

The crux of the issue, then, is whether the trial judge's consideration of this improper aggravating circumstance so infects the balancing process created by the Florida statute that it is constitutionally impermissible for the Florida Supreme Court to let the sentence stand. It is clear that the

Court in *Proffitt* did not accept this notion. Indeed, the joint opinion announcing the judgment listed the four aggravating circumstances that had been found against Proffitt, and one of them—"the petitioner has the propensity to commit murder"—was not and is not a statutory aggravating circumstance in Florida. 428 U. S., at 246 (opinion of Stewart, POWELL, and STEVENS, JJ.).

That opinion did state:

> "The petitioner notes further that Florida's sentencing system fails to challenge the discretion of the jury or judge because it allows for consideration of nonstatutory aggravating factors. In the only case to approve such a practice, *Sawyer* v. *State*, 313 So. 2d 680 (1975), the Florida court recast the trial court's six nonstatutory aggravating factors into four aggravating circumstances—two of them statutory. As noted earlier, it is unclear that the Florida court would ever approve a death sentence based entirely on nonstatutory aggravating circumstances. See n. 8, *supra*." *Id.*, at 256–257, n. 14.

While this statement may properly be read to question the propriety of a sentence based entirely on nonstatutory aggravating factors, it is clear that the opinion saw no constitutional defect in a sentence based on both statutory and nonstatutory aggravating circumstances. See also *California* v. *Ramos, post*, at 1007–1009, quoting *Zant, supra*, at 878.

Barclay's brief is interlarded with rhetorical references to "[l]awless findings of statutory aggravating circumstances," Brief for Petitioner 33, "protective pronouncements which . . . seem to be turned on and off from case to case without notice or explanation," *id.*, at 93, and others in a similar vein. These varied assertions seem to suggest that the Florida Supreme Court failed to properly apply its own cases in upholding petitioner's death sentence. The obvious answer to this question, as indicated in the previous discussion, is that mere errors of state law are not the concern of this Court, *Gryger* v. *Burke*, 334 U. S. 728, 731 (1948), unless they rise

for some other reason to the level of a denial of rights protected by the United States Constitution.

In any event, we do not accept Barclay's premise. Cases such as *Lewis, supra, Williams, supra,* and *Dobbert, supra,* indicate that the Florida Supreme Court does not apply its harmless-error analysis in an automatic or mechanical fashion, but rather upholds death sentences on the basis of this analysis only when it actually finds that the error is harmless. There is no reason why the Florida Supreme Court cannot examine the balance struck by the trial judge and decide that the elimination of improperly considered aggravating circumstances could not possibly affect the balance. See n. 9, *supra.* "What is important . . . is an *individualized* determination on the basis of the character of the individual and the circumstances of the crime." *Zant, supra,* at 879 (emphasis in original).

In this case, as in *Zant, supra,* at 890, our decision is buttressed by the Florida Supreme Court's practice of reviewing each death sentence to compare it with other Florida capital cases and to determine whether "the punishment is too great." *State* v. *Dixon,* 283 So. 2d 1, 10 (1973). See, *e. g., Blair* v. *State,* 406 So. 2d 1103, 1109 (Fla. 1981). It is further buttressed by the rule prohibiting the trial judge from overriding a jury recommendation of life imprisonment unless "virtually no reasonable person could differ." *Tedder* v. *State, supra,* at 910.

The judgment of the Supreme Court of Florida is

*Affirmed.*

JUSTICE STEVENS, with whom JUSTICE POWELL joins, concurring in the judgment.

Death as a punishment is unique in its severity and irrevocability. Since *Furman* v. *Georgia,* 408 U. S. 238 (1972), this Court's decisions have made clear that States may impose this ultimate sentence only if they follow procedures that are designed to assure reliability in sentencing

determinations. *Gregg* v. *Georgia,* 428 U. S. 153, 189, 196–206 (1976); *Proffitt* v. *Florida,* 428 U. S. 242, 247–253 (1976); *Woodson* v. *North Carolina,* 428 U. S. 280 (1976); *Gardner* v. *Florida,* 430 U. S. 349 (1977); *Roberts* v. *Louisiana,* 431 U. S. 633 (1977); *Lockett* v. *Ohio,* 438 U. S. 586 (1978); *Bell* v. *Ohio,* 438 U. S. 637 (1978); *Green* v. *Georgia,* 442 U. S. 95 (1979); *Godfrey* v. *Georgia,* 446 U. S. 420 (1980); *Eddings* v. *Oklahoma,* 455 U. S. 104 (1982). We have "attempted to provide standards for a constitutional death penalty that would serve both goals of measured, consistent application and fairness to the accused." *Eddings, supra,* at 111. Again this Term we have reaffirmed our adherence to these principles. *Zant* v. *Stephens,* 462 U. S. 862, 874–880 (1983). Our decisions, taken as a whole, have given substantial content to the guarantees embodied in the Eighth and Fourteenth Amendments.

Particular features of state sentencing schemes may be sufficiently inadequate, unreliable, or unfair that they violate the United States Constitution. Particular death penalty determinations may demonstrate that a State's sentencing procedure is constitutionally inadequate in one or more respects. See, *e. g., Godfrey* v. *Georgia, supra.* But this is not such a case. After giving careful consideration to this case and others decided by the Supreme Court of Florida, I am convinced that Florida has retained the procedural safeguards that supported our decision to uphold the scheme in *Proffitt* v. *Florida, supra,* and that the death sentence imposed upon Elwood Barclay is consistent with federal constitutional requirements. My conclusions rest on my understanding of certain aspects of Florida's capital sentencing procedures that are not adequately explained in the plurality opinion.

Although I agree with the plurality's conclusion, and with much of what is said in its opinion, I think it important to write separately. The plurality acknowledges, of course, the constitutional guarantees that have been emphasized in

our cases since *Gregg*. But in some of its language the plurality speaks with unnecessary, and somewhat inappropriate, breadth. The Court has never thought it sufficient in a capital case merely to ask whether the state court has been "so unprincipled or arbitrary as to somehow violate the United States Constitution." *Ante*, at 947. Nor does a majority of the Court today adopt that standard. A constant theme of our cases—from *Gregg* and *Proffitt* through *Godfrey*, *Eddings*, and most recently *Zant*—has been emphasis on procedural protections that are intended to ensure that the death penalty will be imposed in a consistent, rational manner. As stated in *Zant*, we have stressed the necessity of "genuinely narrow[ing] the class of persons eligible for the death penalty," and of assuring consistently applied appellate review. 462 U. S., at 877, 890. Accordingly, my primary purpose is to reemphasize these limiting factors in light of the decisions of the Supreme Court of Florida.

## I

Florida has adopted a "trifurcated" procedure for identifying the persons convicted of a capital felony who shall be sentenced to death. See *Tedder* v. *State*, 322 So. 2d 908, 910 (1975). Procedurally it consists of a determination of guilt or innocence by the jury, an advisory sentence by the jury, and an actual sentence imposed by the trial judge. Although the court has the authority to reject a jury's recommendation of either life imprisonment or death, the Florida Supreme Court has repeatedly stated that it will scrutinize with special care any death sentence that is imposed after a jury has recommended a lesser penalty.[1]

---

[1] *Gilven* v. *State*, 418 So. 2d 996, 999 (1982); *Lewis* v. *State*, 398 So. 2d 432, 438 (1981); *Williams* v. *State*, 386 So. 2d 538, 542 (1980); *McCaskill* v. *State*, 344 So. 2d 1276, 1280 (1977); *Burch* v. *State*, 343 So. 2d 831, 834 (1977); *Tedder* v. *State*, 322 So. 2d 908, 910 (1975) ("In order to sustain a sentence of death following a jury recommendation of life, the facts suggesting a sentence of death should be so clear and convincing that virtually no reasonable person could differ").

Analytically the trial judge must make three separate determinations in order to impose the death sentence: (1) that at least one statutory aggravating circumstance has been proved beyond a reasonable doubt; (2) that the existing statutory aggravating circumstances are not outweighed by statutory mitigating circumstances;[2] and (3) that death is the appropriate penalty for the individual defendant.[3]

---

[2] The text sets forth the statutory procedure that existed at the time of petitioner's trial in April 1975. Subsequently the Florida Legislature amended the law to prescribe, at stage (2), a determination whether the statutory aggravating circumstances are outweighed by any mitigating circumstances, statutory or nonstatutory. 1979 Fla. Laws, ch. 79–353. See *Moody* v. *State*, 418 So. 2d 989, 995 (Fla. 1982) (setting aside death sentence because sentencing order did not make clear whether the trial court had considered nonstatutory mitigating circumstances). The amended statute, which became effective in July 1979, was not applied to petitioner in his subsequent resentencing proceeding. Brief for Petitioner 23, n. 7.

As long as evidence of mitigation was not excluded from consideration at the sentencing proceeding, see *Songer* v. *State*, 365 So. 2d 696, 700 (Fla. 1978) (construing pre-1979 statute), the version of stage (2) applied in petitioner's case was consistent with our decisions in *Lockett* v. *Ohio*, 438 U. S. 586 (1978), and *Eddings* v. *Oklahoma*, 455 U. S. 104 (1982). Neither of these cases establishes the weight which must be given to any particular mitigating evidence, or the manner in which it must be considered; they simply condemn any procedure in which such evidence has no weight at all. See, *e. g.*, *Eddings*, *supra*, at 114–115, and n. 10. The Constitution does not require that nonstatutory mitigating circumstances be considered before the legal threshold is crossed and the defendant is found to be eligible for the death sentence. It is constitutionally acceptable to bring such evidence into the decisionmaking process as part of the discretionary post-threshold determination. In this case petitioner does not contend that any relevant mitigating evidence was excluded from his initial sentencing hearing, or that the trial court or jury was precluded as a matter of law from considering any information or arguments in mitigation. See Brief for Petitioner 18–19 (nonstatutory mitigating circumstances).

[3] The language of the statute is consistent with this tripartite analysis. The jury is instructed to "deliberate and render an advisory sentence to the court, based upon the following matters:

"(a) Whether sufficient aggravating circumstances exist as enumerated in subsection (5);

It is instructive to compare Florida's three-part sentencing scheme with Georgia's two-stage procedure, which we have reviewed and upheld this Term. *Zant* v. *Stephens*, 462 U. S. 862 (1983). Under each of these schemes, the defendant may not be sentenced to death unless the sentencing authority—the jury in Georgia, the judge in Florida—makes a threshold determination guided by specific statutory instructions. Georgia's threshold test is simple: a finding of one valid statutory aggravating circumstance is sufficient to make the defendant eligible for the death penalty. In Florida, that is only the first of two required steps before the threshold is crossed.[4] The court must also determine

"(b) Whether sufficient mitigating circumstances exist as enumerated in subsection (6), which outweigh the aggravating circumstances found to exist; and

"(c) Based on these considerations, whether the defendant should be sentenced to life imprisonment or death." Fla. Stat. § 921.141(2) (1977).

Similarly, the trial court must impose life unless he makes certain findings, though the statute does not require him to impose death if he does make these findings:

"(a) That sufficient aggravating circumstances exist as enumerated in subsection (5), and

"(b) That there are insufficient mitigating circumstances, as enumerated in subsection (6), to outweigh the aggravating circumstances." Fla. Stat. § 921.141(3) (1977).

With regard to the third stage, Florida case law appears to have evolved over time. An early case suggested that there was no discretion after the first two criteria had been satisfied. *Cooper* v. *State*, 336 So. 2d 1133, 1142 (Fla. 1976) ("Imposition of the death penalty is never pleasant. Here it cannot be avoided. The statute demands a decision from this Court, and we are bound to follow the law. In this case there were three aggravating and no mitigating circumstances. There is no alternative to the death penalty"). In general, however, the Florida Supreme Court appears to recognize that, though the first two findings establish a "presumption," that presumption may be overcome. See, *e. g.*, *Williams* v. *State, supra,* at 543 (jury's recommendation of life militates against the presumption).

[4] In both Florida and Georgia, if the appellate court finds that no valid statutory aggravating circumstances are adequately supported by the record, the death sentence cannot stand because the legally mandated

whether any of the statutorily enumerated mitigating circumstances exist,[5] and if so, whether they outweigh the statutory aggravating circumstances. If they do, life imprisonment rather than a death sentence is required. Shortly after the enactment of the current statute, the Florida Supreme Court explained:

> "'[T]he procedure to be followed by the trial judges and juries is not a mere counting process of X number of aggravating circumstances and Y number of mitigating circumstances, but rather a reasoned judgment as to what factual situations require the imposition of death and which can be satisfied by life imprisonment in light of the totality of the circumstances present . . . .'" *Elledge* v. *State*, 346 So. 2d 998, 1003 (1977), quoting *State* v. *Dixon*, 283 So. 2d 1, 10 (Fla. 1973).

As we noted in *Proffitt:* "This determination requires the trial judge to focus on the circumstances of the crime and the character of the individual defendant." 428 U. S., at 251.

In both Florida and Georgia, even if the statutory threshold has been crossed and the defendant is in the narrow class of persons who are subject to the death penalty, the sentencing authority is not required to impose the death penalty. In Georgia, the jury is expressly given broad discretion to choose between death and life imprisonment, taking into account all relevant information—aggravating and mitigating—about the character and background of the accused and the circumstances of the crime. See *Zant* v. *Stephens, supra.* In Florida, since more information has already been taken

---

threshold has not been crossed. See, *e. g., Arnold* v. *State*, 236 Ga. 534, 539–542, 224 S. E. 2d 386, 390–392 (1976); *Kampff* v. *State*, 371 So. 2d 1007, 1009–1010 (Fla. 1979). This is the case, of course, if only nonstatutory aggravating circumstances have been found.

[5] If the trial judge applies the wrong standard in determining the presence or absence of mitigating circumstances, the Florida Supreme Court will vacate the death sentence. *Ferguson* v. *State*, 417 So. 2d 631, 638 (Fla. 1982).

into account in crossing the threshold, the third-stage determination is more circumscribed—whether, even though the first two criteria have been met, it is nevertheless not appropriate to impose the death penalty. Cases reaching this conclusion tend to fall into either or both of two general categories: [6] (1) those in which statutory aggravating circumstances exist, and arguably outweigh statutory mitigating circumstances, but they are insufficiently weighty to support the ultimate sentence; [7] and (2) those in which, even though *statutory* mitigating circumstances do not outweigh statutory aggravating circumstances, the addition of nonstatutory mitigating circumstances tips the scales in favor of life imprisonment. [8]

---

[6] These two categories appear at the appellate level in Florida Supreme Court decisions vacating death sentences. It is fair to assume that Florida trial courts, governed by the principles set forth by the State's highest court, apply the same criteria on some occasions to justify imposition of life imprisonment. Such cases would not appear among the reported decisions because the State may not appeal a life sentence. *State* v. *Dixon,* 283 So. 2d 1, 8 (1973).

[7] See *Lewis* v. *State,* 398 So. 2d, at 438–439 (only valid statutory aggravating circumstance was that the defendant was on parole from a prison sentence at the time of the murder; no statutory mitigating circumstances); *Williams* v. *State,* 386 So. 2d, at 543 (at most one valid statutory aggravating circumstance, hindering the enforcement of the laws; no statutory or nonstatutory mitigating circumstances); *Provence* v. *State,* 337 So. 2d. 783, 786–787 (Fla. 1976) (only one statutory aggravating factor, murder in the commission of a robbery; no reference to mitigating circumstances). The existence of this category of cases helps to fulfill one of the constitutionally required functions of a death penalty scheme—"reasonably justify[ing] the imposition of a more severe sentence on the defendant compared to others found guilty of murder," *Zant* v. *Stephens,* 462 U. S. 862, 877 (1983).

[8] As discussed in n. 2, *supra,* under the pre-1979 statute, consideration of nonstatutory mitigating circumstances at the third stage sufficed to satisfy the constitutional requirement set forth in *Lockett* and *Eddings.* This factor, as well as the weakness of the valid aggravating circumstance, apparently underlies the Florida Supreme Court's decision in *Lewis* v. *State,* 398 So. 2d 432 (1981). Lewis' trial took place before the 1979 amendment to the statute. The jury recommended life; the trial court, finding no stat-

Apparently believing that the Federal Constitution so required, the Florida Supreme Court has adopted a rule that the "aggravating circumstances specified in the statute are exclusive, and no others may be used for that purpose." *Purdy* v. *State*, 343 So. 2d. 4, 6 (1977); *Miller* v. *State*, 373 So. 2d 882, 885 (1979); see *Cooper* v. *State*, 336 So. 2d 1133, 1139 (1976); *Provence* v. *State*, 337 So. 2d. 783, 786 (1976).[9] Not only has it held that nonstatutory aggravating circumstances do not satisfy the first threshold criterion—whether statutory aggravating circumstances exist.[10] It has also held

---

utory mitigating circumstances, nevertheless imposed the death sentence. The Florida Supreme Court reversed and remanded, stating that "the jury is not limited, in its evaluation of the question of sentencing, to consideration of the statutory mitigating circumstances. It is allowed to draw on any considerations reasonably relevant to the question of mitigation of punishment." *Id.*, at 439.

In addition, in some cases decided under the pre-1979 statute, see n. 2, *supra*, the Florida Supreme Court did not expressly conduct the stage (2) balancing literally required by the statute, but held that the "mitigating circumstances"—including nonstatutory factors—outweighed the aggravating circumstances. See *Halliwell* v. *State*, 323 So. 2d 557, 561 (1975) (defendant, *inter alia*, was a highly decorated Green Beret who had served in Vietnam); *Buckrem* v. *State*, 355 So. 2d 111, 113 (Fla. 1978) (defendant was "gainfully employed").

[9] This rule appears to have been adopted after Barclay's 1975 trial, and after our 1976 decision in *Proffitt*. In that case the trial court relied on three statutory aggravating circumstances and one nonstatutory aggravating factor—that petitioner "has the propensity to commit murder." The Florida Supreme Court, without comment, approved all of these findings, and we upheld the death sentence. *Proffitt* v. *State*, 315 So. 2d 461, 466–467 (1975), aff'd, 428 U. S. 242, 246–247 (1976). See also *Sawyer* v. *State*, 313 So. 2d 680, 681–682 (Fla. 1975) (twice referred to in our *Proffitt* opinion, 428 U. S., at 250, n. 8, 256–257, n. 14). In *Proffitt* we assumed that the trial court was authorized to receive evidence on any matter that it deemed relevant to sentencing. *Id.*, at 248.

[10] *Purdy* v. *State*, 343 So. 2d 4, 6 (1977) ("Under the provisions of Section 921.141, Florida Statutes, aggravating circumstances enumerated in the statute must be found to exist before a death sentence may be imposed. The specified statutory circumstances are exclusive; no others may be used for that purpose").

that evidence supporting nonstatutory aggravating factors simply may not be introduced into evidence at any stage in the sentencing proceeding. See *Elledge* v. *State,* 346 So. 2d, at 1002.[11] Under Florida law, the introduction of such evidence is error, although under some circumstances, the Florida Supreme Court treats it as harmless error.[12]

The Florida rule that statutory aggravating factors must be exclusive affords greater protection than the Federal Constitution requires. Although a death sentence may not rest

---

[11] The court remanded to the trial court for a new sentencing trial "at which the factor of the Gaffney murder shall not be considered." 346 So. 2d, at 1003.

[12] In *Elledge,* the trial court imposed the death penalty in reliance on a nonstatutory circumstance and several statutory aggravating circumstances. After holding that consideration of the nonstatutory factor was error, the Florida Supreme Court enunciated the touchstone for determining whether it was reversible error: the presence or absence of mitigating circumstances. As long as mitigating circumstances had been found, it was impossible to know whether the result of the statutorily required weighing process would have been different in the absence of the impermissible nonstatutory aggravating factor. See also *Riley* v. *State,* 366 So. 2d 19, 22 (Fla. 1979); *Mikenas* v. *State,* 367 So. 2d 606, 610 (Fla. 1978); *Menendez* v. *State,* 368 So. 2d 1278, 1281 (Fla. 1979); *Blair* v. *State,* 406 So. 2d 1103, 1109 (Fla. 1981).

On the other hand, as the *Elledge* court also noted, if there were no statutory mitigating circumstances, and if the court had found at least one statutory aggravating circumstance along with a nonstatutory aggravating factor, "there is no danger that nonstatutory circumstances have served to overcome the mitigating circumstances in the weighing process which is dictated by our statute." 346 So. 2d, at 1003. By definition, one or more statutory aggravating circumstances will always outweigh the complete absence of statutory mitigating circumstances. Furthermore, in another case, *Brown* v. *State,* 381 So. 2d 690 (1980), the Florida Supreme Court held that, because the trial court had stated that the one mitigating circumstance, appellant's age, had "only 'some minor significance,'" the death sentence could be sustained even though the court relied on two improper aggravating circumstances as well as two well-founded aggravating circumstances. *Id.,* at 696. "This is so because unlike *Elledge,* here 'we can know' that the result of the weighing process would not have been different had the impermissible factors not been present." *Ibid.*

*solely* on a nonstatutory aggravating factor, see *Zant* v. *Stephens*, 462 U. S., at 876–878, the Constitution does not prohibit consideration at the sentencing phase of information not directly related to either statutory aggravating or statutory mitigating factors, as long as that information is relevant to the character of the defendant or the circumstances of the crime. *Zant, supra*, at 878–879; *Gregg* v. *Georgia*, 428 U. S., at 164, 196–197, 206; *Proffitt* v. *Florida*, 428 U. S., at 242, 248, 256–257, n. 14. As we recently wrote in *Zant*, "[w]hat is important at the selection stage is an *individualized* determination on the basis of the character of the individual and the circumstances of the crime." 462 U. S., at 879.

## II

In this case the Florida Supreme Court held that the trial judge had properly determined that at least four statutory aggravating circumstances were present. *Barclay* v. *State*, 343 So. 2d, at 1266, 1270–1271 (1977). Petitioner alleges that none of those four aggravating circumstances withstands scrutiny under Florida law and under our prior cases, including *Godfrey* v. *Georgia*, 446 U. S. 420 (1980). But it is not necessary to agree with the Florida Supreme Court's appraisal of all four findings. Under Florida law, if there are no statutory mitigating circumstances,[18] one valid statutory

---

[18] Petitioner argues that the jury must have found nonstatutory mitigating circumstances, Brief for Petitioner 90, n. 29, because when it recommended life imprisonment, it stated that "sufficient mitigating circumstances do exist which outweigh any aggravating circumstances." *Id.*, at 88, quoting Sentencing Phase Tr. 180. But at the time of Barclay's trial, nonstatutory mitigating circumstances did not play any role under Florida law in determining whether the legal threshold had been crossed. As we have explained above, this procedure was not constitutionally infirm. See n. 2, *supra*. Nor does the possible existence of nonstatutory mitigating circumstances require that the death sentence automatically be set aside if one or more statutory aggravating circumstances are invalid under state law, or if nonstatutory aggravating factors have improperly been considered. As long as the Federal Constitution did not bar introduction of the

aggravating circumstance will generally suffice to uphold a death sentence on appeal even if other aggravating circumstances are not valid.[14] The Federal Constitution requires no more, at least as long as none of the invalid aggravating circumstances is supported by erroneous or misleading information. See *Zant* v. *Stephens, supra,* at 887–889.

I do not accept petitioner's contention that *none* of the statutory aggravating circumstances found by the trial court may be sustained under Florida law and the Federal Constitution. Tr. of Oral Arg. 15. The trial court found that the murder was "especially heinous, atrocious, or cruel" because the victim "was knocked to the ground and repeatedly stabbed by Barclay as he writhed in pain begging for mercy." App. 46, 133; see *id.,* at 9–14 (statement of facts in sentencing order); 343 So. 2d, at 1271, n. 6.[15] The court also found that the crime took place in the commission of a kidnaping, because "the defendants picked up the hitch-hiking victim with intent to murder him. They refused to take him to the place requested and by force and/or threats kept him in their car until they found an appropriate place for the murder." App. 126; see *id.,* at 39. It is not our role to reexamine the trial court's findings of fact, which have been affirmed by the Florida Supreme Court. Assuming those facts to be true, there is no federal constitutional infirmity in these two findings of statutory aggravating circumstances.

Petitioner challenges the trial court's findings that in committing the murder, he "KNOWINGLY CREATED A GREAT RISK OF DEATH TO MANY PERSONS," and that the murder was committed to "HINDER THE LAW-

---

evidence underlying those aggravating factors, it does not require that the death sentence be set aside. See *Zant* v. *Stephens,* 462 U. S., at 888–889.

[14] See n. 12, *supra;* but see n. 7, *supra* (citing cases).

[15] In *Proffitt,* we rejected a facial attack on this aggravating circumstance, see 428 U. S., at 255–256. As applied to the facts found by the trial court in this case, see *ante,* at 942–944, the application of this factor raises no constitutional problems. See *State* v. *Dixon,* 283 So. 2d, at 9; cf. *Godfrey* v. *Georgia,* 446 U. S. 420 (1980).

FUL EXERCISE OF ANY GOVERNMENTAL FUNC-
TION OR THE ENFORCEMENT OF THE LAWS." *Id.*,
at 122–125, 128–131.[16]  He does not, however, dispute the
facts recited by the trial court in support of these findings—
that he and his colleagues had stalked several potential white
victims before picking Stephen Orlando, and that they had
sent tapes to a radio station urging mass racial violence.  See
Brief for Petitioner 5–6, 9–10.  This evidence was properly
before the advisory jury and the judge because it was admis-
sible at the guilt phase of the proceeding.  Thus, whether or
not these particular aggravating circumstances have been
narrowly defined by the Florida Supreme Court, this case—
like *Zant* v. *Stephens*—involves challenged findings of "statu-
tory aggravating circumstance[s] . . . whose terms plausibly
described aspects of the defendant's background that were
properly before the jury and whose accuracy was unchal-
lenged."  462 U. S., at 887.

I am also unpersuaded by petitioner's contention that the
trial court committed reversible error of constitutional mag-
nitude by considering nonstatutory aggravating factors.  In
its discussion of the statutory aggravating circumstance that
the defendant was "under sentence of imprisonment" when
he committed the murder, the court noted that petitioner had
not been in prison at the time of the offense but that he had
an extensive prior criminal record which was "an aggravat-
ing circumstance."  The court also noted that petitioner's
previous conviction for breaking and entering with intent to
commit larceny was "more of an aggravating than a negative
circumstance," even though the record did not show whether

---

[16] Petitioner bases his challenges to these two aggravating circumstances
in large part on *Godfrey* v. *Georgia, supra.*  See Brief for Petitioner 45,
47, 57–58.  We need not decide whether the principles of *Godfrey* have
been violated by these two findings, because other statutory aggravating
circumstances are valid.  In contrast, in *Godfrey*, once the "broad and
vague" aggravating circumstance was struck down, no valid statutory ag-
gravating circumstances remained.  See *Godfrey, supra,* at 426, 432–433,
n. 15; *Zant* v. *Stephens, supra,* at 878.

that offense had involved violence, as required by the terms of one of the statutory aggravating circumstances. App. 120–122. But even though, under state law, these factors did not support findings of statutory aggravating circumstances, the information appears to have been properly before the advisory jury and the judge. The Florida Supreme Court has recognized that information about the defendant's prior criminal record may be presented during the sentencing phase to negate one of the statutory mitigating factors. See *Booker* v. *State*, 397 So. 2d 910, 918 (1981). In any event, nothing in the Federal Constitution bars the introduction of a defendant's prior criminal record, which is highly relevant to his individual background and character. See *Zant*, 462 U. S., at 887–888; *Proffitt*, 428 U. S., at 252, n. 9.[17]

Similarly, the judge's candid exposition of his deeply felt concern about racial crimes had no bearing on any statutory aggravating circumstance, but in and of itself it does not undermine the legitimacy of the ultimate sentence.[18] The sentencing process assumes that the trier of fact will exercise judgment in light of his or her background, experiences, and values. Just as sentencing juries "maintain a link between

[17] In *Proffitt* we expressly noted that the trial court "may order preparation of a presentence investigation report to assist him in determining the appropriate sentence. . . . These reports frequently contain much information relevant to sentencing." 428 U. S., at 252, n. 9. Petitioner's trial took place before this Court's decision in *Gardner* v. *Florida*, 430 U. S. 349 (1977), which held that due process requires that such materials be provided to defense counsel to permit explanation and rebuttal of potentially misleading or inaccurate information. The Florida Supreme Court *sua sponte* vacated the original sentence and remanded for a *Gardner* hearing regarding the accuracy of the undisclosed portions of the presentence investigation report. On remand the trial court found that petitioner's responses did not affect the original sentence; the Florida Supreme Court affirmed; and the issue is not before us on certiorari.

[18] This is not because it assisted the trial court in "weighing the 'especially heinous, atrocious, or cruel' statutory aggravating circumstance," *ante*, at 949, but because it pertained more generally to the trial judge's exercise of his sentencing discretion—the third stage of the sentencing process.

contemporary community values and the penal system," *Gregg* v. *Georgia*, 428 U. S., at 190, sentencing judges "'with experience in the facts of criminality posses[s] the requisite knowledge to balance the facts of the case against the standard criminal activity . . . .'" *Proffitt, supra,* at 252, n. 10, quoting *State* v. *Dixon*, 283 So. 2d, at 8. Of course, if the criteria imposed by law are not satisfied in a particular case, a trial judge's reactions based on his personal experiences cannot justify the death penalty. But that is not the case here.

Petitioner emphasizes, however, that the jury recommended life imprisonment and that the court rejected that recommendation. As we held in *Proffitt*, a State may constitutionally give the court the authority to accept or reject the jury's conclusion. 428 U. S., at 252. The court's decision must itself be consistent with constitutional standards, but those standards were not violated in this case. As petitioner's own statement of facts makes clear, the jury was erroneously informed by defense counsel in closing argument that petitioner "had never been convicted of a crime and had no criminal charges pending against him." [19] This statement may have led the jury to believe that there was a statutory mitigating circumstance—no substantial history of prior criminal activity. But the presentence report revealed that petitioner had previously served six months for the felony of uttering a forgery, had been on probation for the felony of breaking and entering with intent to commit grand larceny, and had been arrested on several misdemeanor charges and convicted of at least one. [20] The judge could properly consider that information in deciding whether to accept or reject the jury's recommendation. [21] In addition, even if the jury

---

[19] Brief for Petitioner 18.

[20] App. 17–18, 25, 33, 34–35, 107–108, 121–122.

[21] The Florida statute gives the trial court an independent duty to determine whether mitigating circumstances exist, and the Florida Supreme Court has approved the court's reliance on information not available to the

found that there were nonstatutory mitigating factors, it is clear that the trial court knew of each of the factors petitioner recites and did not find them persuasive.[22]   If we find that proper procedures have been followed, in the end it is not our function to decide whether we agree with the 7-to-5 majority of the advisory jury or with the trial judge.   The Florida Supreme Court has held that, under state law, it was permissible on these facts for the court to reject the jury's recommendation of life imprisonment.   343 So. 2d, at 1271.[23]

Finally, petitioner contends that the Florida Supreme Court has abdicated its constitutionally mandated responsibility to perform meaningful appellate review.   This contention cannot stand or fall on a single case, particularly since the rather unusual circumstances in this case help to explain the limited analysis provided by the Florida Supreme Court. On direct appeal from the initial imposition of the death sen-

---

jury.  *White* v. *State,* 403 So. 2d 331, 339–340 (1981); *Swan* v. *State,* 322 So. 2d 485, 488-489 (1975).

[22] See Brief for Petitioner 90–92, n. 29.   Barclay was 23 years old, gainfully employed and the father of several children.   App. 25, 30–31, 115, 119.   He did not inflict the mortal wounds.   *Id.,* at 23, 112.   Dougan, not Barclay, originated the idea and was the "leading force" in implementing it. *Id.,* at 24, 113.   Three other codefendants, Hearn, Crittendon, and Evans, received prison sentences.   *Id.,* at 22–24, 113.   Recognizing these facts, the trial court also found them to be negated or outweighed by other factors.   For example, even though Dougan rendered the "coup de grace," the trial court found that "[t]he evidence shows that Barclay was the first to demonstrate homicidal intent by throwing the victim to the ground and repeatedly stabbing him with a knife."   *Id.,* at 23; see *id.,* at 112.   And even though Dougan was the ringleader, the court found that both petitioner and Dougan were "the primary culprits" and "both were the major participants," *id.,* at 24–25; see *id.,* at 113–114, and that Barclay was not under the substantial domination of Dougan or any other person.   *Id.,* at 26, 114–116.

[23] The Florida Supreme Court has overturned numerous death sentences imposed by trial courts despite a jury recommendation of life imprisonment.   See *Walsh* v. *State,* 418 So. 2d 1000, 1003–1004 (1982) (listing 23 such cases).   It has also upheld a substantial number of such sentences. *Ibid.*   The disposition of each case depends on its particular circumstances.

tence in 1975, it appears that petitioner did not challenge the validity of any of the statutory aggravating circumstances. Pet. for Cert. 2. The sentence was affirmed. Most of the Florida case law on which petitioner now relies was developed after the initial decision in his case. See generally Brief for Petitioner 29–83. Barclay did not receive the benefit of this case law because of the limited nature of the Florida Supreme Court's remand in light of this Court's decision in *Gardner* v. *Florida,* 430 U. S. 349 (1977). When that court vacated the death sentence and ordered the trial court to hold a hearing to permit petitioner to rebut undisclosed information in the presentence report, it applied a uniform procedure which expressly limited the scope of the trial court's proceedings and the scope of appellate review to "matters related to compliance with this order." 362 So. 2d 657, 658 (1978).[24] The court's subsequent opinion accordingly dealt only with the presentence report and treated the previous affirmance of the death sentence as "law of the case" with regard to the aggravating circumstances.

More generally, the question is whether, in its regular practice, the Florida Supreme Court has become a rubber stamp for lower court death-penalty determinations. It has not. On 212 occasions since 1972 the Florida Supreme Court has reviewed death sentences; it has affirmed only 120 of them. The remainder have been set aside, with instructions either to hold a new sentencing proceeding or to impose a life sentence. In making these judgments the court has the benefit of specific written findings by the trial court, setting

---

[24] The Florida Supreme Court adopted a uniform procedure for hearings on remand in light of *Gardner* v. *Florida.* It explained this procedure in *Dougan* v. *State,* 398 So. 2d 439, 440 (1981): "Our directive was quite clear that this Court would review a reimposition of the death penalty 'limited to matters related to the compliance with this order.' . . . Our vacation of Dougan's death sentence for *Gardner* relief was technically-based, serving the sole purpose of allowing Dougan's counsel to demonstrate that matters contained in the pre-sentence investigation report were improper and prejudicial."

forth the facts underlying each aggravating and mitigating circumstance.   See *State* v. *Dixon*, 283 So. 2d, at 8. Although no appellate court's written decisions, including those of the Florida Supreme Court, are always a model of clarity and analysis, the actual decisions by that court have confirmed one of the premises supporting our decision in *Proffitt*—

> "The Florida capital-sentencing procedures thus seek to assure that the death penalty will not be imposed in an arbitrary or capricious manner.   Moreover, to the extent that any risk to the contrary exists, it is minimized by Florida's appellate review system, under which the evidence of the aggravating and mitigating circumstances is reviewed and reweighed by the Supreme Court of Florida 'to determine independently whether the imposition of the ultimate penalty is warranted.' *Songer* v. *State*, 322 So. 2d 481, 484 (1975).   See also *Sullivan* v. *State*, 303 So. 2d 632, 637 (1974)."   428 U. S., at 253.

The cursory analysis in the two opinions upholding petitioner's death sentence—which admittedly I do not applaud— does not require us to set aside the sentence when we have determined that the sentence itself does not suffer from any constitutional flaw.

I therefore concur in the judgment.

JUSTICE MARSHALL, with whom JUSTICE BRENNAN joins, dissenting.

Based on a sentencing order rife with errors, the trial judge condemned petitioner Elwood Barclay to death.   The Florida Supreme Court then conducted a perfunctory review and affirmed the sentence.   Today the plurality approves this miscarriage of justice.   In doing so it is utterly faithless to the safeguards established by the Court's prior decisions. I dissent.

## I

I continue to adhere to my view that the death penalty is in all circumstances cruel and unusual punishment forbidden by the Eighth and Fourteenth Amendments. See *Gregg* v. *Georgia*, 428 U. S. 153, 231 (1976) (MARSHALL, J., dissenting); *Furman* v. *Georgia*, 408 U. S. 238, 358–369 (1972) (MARSHALL, J., concurring). I would vacate petitioner's death sentence on this basis alone. However, even if I accepted the prevailing view that the death penalty may constitutionally be imposed under certain circumstances, I would vacate the death sentence imposed in this case.

## II

In order to assess the process by which petitioner was sentenced to death, it is vital to understand the trial judge's explanation for his sentence of death and the subsequent review of that sentence by the Florida Supreme Court. In my view the plurality's discussion of these matters is woefully incomplete. I therefore begin by setting out the facts necessary for our review.

### A

Under Florida law, if a defendant is found guilty of a capital offense, a separate sentencing hearing is held. Fla. Stat. § 921.141(1) (1977). After hearing evidence relating to aggravating and mitigating circumstances, the jury renders an advisory verdict. § 921.141(2). The judge then imposes sentence. In this case, the jury concluded that sufficient aggravating circumstances did not exist to justify a death sentence and that mitigating circumstances existed which outweighed any aggravating circumstances.[1] It therefore recommended life imprisonment. The trial judge rejected

---

[1] See Brief for Petitioner 19 (quoting transcript of penalty trial, at 180); Fla. Stat. § 921.141(2) (1977) (jury's advisory verdict is based upon its determination of whether sufficient aggravating circumstances exist and whether sufficient mitigating circumstances exist which outweigh the aggravating circumstances).

the jury's recommendation, however, and sentenced petitioner to death. The rationale for the judge's decision is set forth in his sentencing order, which states his findings as to the mitigating and aggravating circumstances set out in the Florida capital punishment statute. See App. 1; § 921.141(3).

The trial judge found that none of the statutory mitigating circumstances applied to Barclay.[2] Instead, the judge concluded that the *absence* of one of the mitigating circumstances itself constituted an aggravating circumstance. Florida law identifies as a mitigating circumstance the fact that a defendant "has no significant history of prior criminal activity." § 921.141(6)(a). The statute does not make the presence of a significant history of prior criminal activity an aggravating circumstance. § 921.141(5). See *Maggard* v. *State*, 399 So. 2d 973, 977–978 (Fla. 1981). Nonetheless, after finding that petitioner had a criminal record, the trial judge stated that the prior record constituted an aggravating circumstance. App. 19. This determination was clearly lawless. The Florida Supreme Court has expressly held that a "substantial history of prior criminal activity is not an aggravating circumstance under the statute." *Mikenas* v. *State*, 367 So. 2d 606, 610 (1978).

The trial judge then turned to the eight aggravating circumstances that the Florida Legislature had actually estab-

---

[2] The trial judge did not mention the subject of nonstatutory mitigating circumstances. During closing argument at the sentencing trial, petitioner's counsel had contended that such circumstances were present. For example, counsel noted that petitioner was the father of five children and was gainfully employed, and he argued that petitioner was a follower and not a leader among the murderers. He also pointed to the disparity in treatment among the various participants in the crime, three of whom faced punishment for only second-degree murder. The jury's finding that sufficient mitigating circumstances existed which outweighed any aggravating circumstances indicates that the jury found some mitigating circumstances. Cf. *Elledge* v. *State*, 346 So. 2d 998, 1003 (Fla. 1977).

lished.[3] Even though the State had relied on only *one* of these circumstances during the sentencing hearing,[4] the trial judge managed to find that six were relevant.

The first aggravating circumstance applies if a capital felony has been "committed by a person under sentence of imprisonment." § 921.141(5)(a). The judge stated that Barclay was *not* under imprisonment at the time of the capital offense—a fact which should have been dispositive under the plain language of the statute. Nonetheless, the judge then pointed to Barclay's prior arrests and the fact that he had previously been on probation for a felony, and he again stated that petitioner's record constituted an aggravating circumstance. App. 33. Reliance on the arrests was certainly improper under Florida law, because any charge which has "not resulted in a conviction at the time of the [capital] trial" is "a nonstatutory aggravating factor." *Elledge* v. *State*, 346 So. 2d 998, 1002 (Fla. 1977). See also *Provence* v. *State*, 337 So. 2d 783, 786 (Fla. 1976). Reliance on the fact that petitioner had formerly been on probation was also error, since the sentence of imprisonment must exist at the time of the capital felony. See *Ferguson* v. *State*, 417 So. 2d 631, 636 (Fla. 1982); *Peek* v. *State*, 395 So. 2d 492, 499 (Fla. 1980).

The second aggravating circumstance found by the trial judge was that petitioner had been "previously convicted of another capital felony or of a felony involving the use or threat of violence to the person." § 921.141(5)(b). The court based this finding on petitioner's presentence report, which showed an earlier conviction for breaking and entering with intent to commit grand larceny. Although there was absolutely no evidence that this prior felony involved the use or threat of violence, the judge asserted that "such crime can

---

[3] See Fla. Stat. § 921.141(5) (1977). Since petitioner's trial, an additional aggravating circumstance has been added to the list. See § 921.141(5)(i) (1981).

[4] See Tr. of Oral Arg. 5.

and often does involve violence or threat of violence." App. 35. The judge's reliance on this aggravating circumstance was contrary to Florida law. This statutory factor applies only where "the judgment of conviction discloses that it involved violence," *Mann* v. *State*, 420 So. 2d 578, 581 (Fla. 1982), and the Florida Supreme Court has explicitly held that the crime of breaking and entering with intent to commit a felony does *not* constitute a crime of violence within the meaning of this provision. *Lewis* v. *State*, 398 So. 2d 432, 438 (1981); *Ford* v. *State*, 374 So. 2d 496, 501–502, and n. 1 (1979), cert. denied, 445 U. S. 972 (1980). Moreover, the trial judge's reliance on information contained in the presentence report to establish this aggravating circumstance itself constituted an error under state law. See *Williams* v. *State*, 386 So. 2d 538, 542–543 (Fla. 1980).

The trial court next found that petitioner had "knowingly created a great risk of death to many persons." § 921.141(5) (c). This statutory circumstance was directed at conduct creating a serious danger to a large group of people, such as exploding a bomb in a public place or hijacking an airplane.[5] Thus, something in the nature of the homicidal act itself or in the conduct immediately surrounding the act must create a great risk to many people. *Bolender* v. *State*, 422 So. 2d 833, 838 (Fla. 1982); *Ferguson* v. *State*, 417 So. 2d 639, 643, 645 (Fla. 1982); *Tafero* v. *State*, 403 So. 2d 355, 362 (Fla. 1981); *Kampff* v. *State*, 371 So. 2d 1007, 1009 (Fla. 1979); *Elledge* v. *State*, *supra*, at 1004. For example, the aggravating circumstance does not apply when "no one else was around" at the time of the capital felony, even though the murderer then flagged down a passing motorist and struck

---

[5] As the Chairman of the Select Committee on the Death Penalty of the Florida House of Representatives stated during hearings on the 1972 death penalty statute, this aggravating circumstance was intended to apply to cases in which "[t]he defendant knowingly created risk of death to many persons. That's your hijacking sectio[n]." Hearings before the Select Committee on the Death Penalty 66 (Aug. 4, 1972).

him with a machete, drove at high speeds over a significant distance, and took a hostage and threatened to kill her. *Mines* v. *State*, 390 So. 2d 332, 337 (Fla. 1980). It is undisputed in this case that the murder took place at "an isolated trash dump" where no one other than the perpetrators and the single victim was present. See *Barclay* v. *State*, 343 So. 2d 1266, 1267 (Fla. 1977). The trial judge incorrectly relied on conduct occurring both *before* and *after* the capital felony. App. 38. Invocation of this aggravating circumstance was therefore clearly unauthorized by state law.

The trial court's remaining findings are also problematic. For example, the judge found as a fourth aggravating circumstance that the murder was committed during a kidnaping. *Id.*, at 39–40; see § 921.141(5)(d). However, the only witness who testified about the circumstances prior to the murder noted that the victim, a hitchhiker, willingly entered the car and rode with the defendants voluntarily.[6] At the close of the trial on the issue of guilt, the trial judge himself had deemed the evidence insufficient to establish a kidnaping for purposes of giving a jury instruction as to felony murder.

The trial judge's explanation of his sentence is all the more remarkable in light of two salient requirements of the Florida death penalty scheme. First, each of the statutory aggravating circumstances "must be proved beyond a reasonable doubt before being considered by judge or jury." *State* v. *Dixon*, 283 So. 2d 1, 9 (Fla. 1973), cert. denied, 416 U. S. 943 (1974). Second, when the jury has recommended a life sentence, the judge may not impose a death sentence unless "'the facts suggesting a sentence of death [are] so clear and convincing that no reasonable person could differ.'" *Proffitt* v. *Florida*, 428 U. S. 242, 249 (1976) (opinion of Stewart, POWELL, and STEVENS, JJ.), quoting *Tedder* v. *State*, 322

---

[6] William Hearn, a participant in the murders, testified that the victim asked the other passengers if they smoked marihuana and indicated that he had a friend from whom they could buy some. The victim also engaged in other conversation. See Tr. of Trial 1369–1372.

So. 2d 908, 910 (Fla. 1975). In light of these standards, the judge's sentencing order in this case was totally inadequate.

## B

Nor can the sentencing judge's abysmal performance be deemed inadvertent or aberrant. To begin with, after the Florida Supreme Court had vacated the original sentence and remanded the case for reconsideration in light of *Gardner* v. *Florida,* 430 U. S. 349 (1977), petitioner's counsel brought to the attention of the trial judge several flagrant legal errors in the original sentencing order.[7] For example, counsel noted that defendant's prior criminal record was not a proper aggravating circumstance, citing a controlling decision of the Florida Supreme Court, *Mikenas* v. *State,* 367 So. 2d 606 (1978).[8] Even the plurality acknowledges that the trial judge erred in this finding. *Ante,* at 946. Nonetheless, the trial judge drafted a new sentencing order which simply repeated his prior erroneous analysis. App. 107–108.

The trial judge's actions in other capital cases are also instructive. Judge Olliff has sentenced three other defendants to death besides petitioner and his codefendant.[9] In each of these cases, as in petitioner's case, Judge Olliff ignored a jury's advisory sentence of life imprisonment.[10] In each of the cases, as in petitioner's case, the judge failed to find a single mitigating circumstance. The judge has repeatedly found

---

[7] See Tr. of Resentencing Hearing 56–83.

[8] See *id.,* at 61–62.

[9] See *Lewis* v. *State,* 398 So. 2d 432 (Fla. 1981); *Dobbert* v. *State,* 375 So. 2d 1069 (Fla. 1979); *Carnes* v. *State,* Nos. 74–2024, 74–2131 (Cir. Ct. 4th Jud. Cir., Duval County, Florida, Nov. 19, 1974), App. to Brief for Petitioner 15a.

[10] There is only one reported decision in which Judge Olliff did not give a convicted capital felon a death sentence. *Hopkins* v. *State,* 418 So. 2d 1183 (Fla. App. 1982). In that case, however, the judge attempted to sentence the defendant to a term of 199 years and to reserve review of any

that the felony was committed by a person under a sentence of imprisonment, that the defendant had previously been convicted of a violent felony, and that the defendant created a great risk of death to many persons, *even though virtually all of these findings had no foundation in Florida law.*[11] And each time, Judge Olliff has recounted his experiences during World War II and recited boilerplate language to the effect that he was not easily shocked but that the offense involved shocked him.[12]

---

release of the defendant for 66 years, even though such a sentence was not authorized by law. *Id.*, at 1183–1184. The Florida Appellate Court vacated the sentence and remanded for resentencing.

[11] With respect to the statutory provision that the felony had been committed by a person under a sentence of imprisonment, Judge Olliff's findings were as follows. In *Dobbert*, the judge concluded that the circumstance applied even though there was no evidence that Dobbert was under sentence of imprisonment at the time of the murder. See 375 So. 2d, at 1070. In *Carnes*, Judge Olliff concluded that although the defendant was not under sentence of imprisonment, the aggravating circumstance nonetheless applied because Carnes was out on bond on another charge at the time of the offense. App. to Brief for Petitioner 32a. In *Lewis*, the judge correctly concluded that the aggravating circumstance applied. 398 So. 2d, at 438.

With respect to the statutory circumstance of a prior conviction involving a violent felony, in *Lewis* Judge Olliff erroneously relied on convictions for breaking and entering. *Ibid.* In *Dobbert*, the factor was not mentioned. In *Carnes*, Judge Olliff found the circumstance applicable even though the defendant had never been convicted of *any* offense. App. to Brief for Petitioner 33a–34a.

As for the creation of a great risk of death to many persons, the Florida Supreme Court concluded that the judge had erred in finding the circumstance applicable in both *Lewis*, *supra*, at 438, and *Dobbert*, *supra*, at 1070. In *Carnes*, Judge Olliff found the aggravating circumstance applicable even though there were only two other people present in the house when the defendant shot the victim and both of them were in another room. App. to Brief for Petitioner 34a–36a.

[12] In *Lewis*, Judge Olliff wrote:

"My experience with the sordid, tragic and violent side of life has not been confined to the Courtroom. During World War II, I was a United States

## C

In reviewing the hopelessly flawed sentencing order, the Florida Supreme Court did not identify a single error in the trial judge's explanation. Instead, it praised Judge Olliff's performance:

> "The trial judge here painstakingly and with reasoned judgment detailed the factors which caused his departure from the jury's recommendation. *His thorough analysis is precisely the type we would expect* from mature, deliberative judges in this state. It suggests why the Legislature put the trial judges of Florida in the middle of the sentencing process for capital cases." 343 So. 2d, at 1271, n. 8 (emphasis added).

---

Army Paratrooper and served in ground combat in Europe. I have seen death and suffering in almost every conceivable form.

"I am not easily shocked or moved by tragedy—but this was an especially heinous, atrocious and cruel crime—and is deserving of no sentence but death." App. to Brief for Petitioner 78a.

In *Dobbert*, Judge Olliff wrote:

" 'My experience with the sordid, tragic and violent side of life has not been confined to the Courtroom. During World War II, I was a United States Army Paratrooper and served overseas in ground combat. I have had friends blown to bits and have seen death and suffering in every conceivable form.

" 'I am not easily shocked or [a]ffected by tragedy or cruelty—but this murder of a helpless, defenseless and innocent [person] is the most cruel, atrocious and heinous crime I have eve[r] personally known of—and it is deserving of no sentence but death.'" *Dobbert* v. *Florida*, 432 U. S. 282, 296, n. 9 (1977).

In *Carnes*, Judge Olliff wrote:

"My experience with the sordid, tragic and violent side of life has not been confined to the Courtroom. During World War II, I was a United States Army Paratrooper and served overseas in ground combat. I have seen friends blown to bits and have seen death and suffering in almost every conceivable form.

"I am not easily shocked or moved by tragedy—but this was an especially shocking crime." App. to Brief for Petitioner 43a.

The Florida Supreme Court's perfunctory analysis focused on the death sentence imposed on petitioner's codefendant, Jacob Dougan. *Id.*, at 1270–1271. The court subsequently indicated that "virtually the same considerations" applied to Barclay. *Id.*, at 1271. As a result, it never discussed the trial judge's specific findings concerning Barclay. With respect to the aggravating circumstances applicable to Dougan, the Florida Supreme Court stated that "the trial judge recited that four factors essentially had no relevance here." *Ibid.* (footnote omitted). However, two of the factors referred to in this sentence were aggravating circumstances that the trial judge had explicitly discussed.[13] In short, the Florida Supreme Court mischaracterized the trial judge's opinion as to these aggravating circumstances.[14] The Florida Supreme Court then listed the four other aggravating circumstances that had been relied upon and stated in conclusory fashion that the trial judge's findings were "well documented in the record before us." *Ibid.*

The Florida Supreme Court recognized that the jury had recommended a life sentence for Barclay. But the court stated that this recommendation was properly rejected so that there would be no disparity of treatment between Dougan and Barclay: " 'Equal Justice Under Law' is carved over the doorway to the United States Supreme Court build-

---

[13] Thus, in summarizing the trial judge's findings, the Florida Supreme Court stated that "Dougan was not under sentence of imprisonment" and "had not been previously convicted of a major felony." 343 So. 2d, at 1271, n. 3. In discussing each of these aggravating circumstances, however, the trial judge had plainly found them applicable. App. 34–35. In contrast, when a circumstance was inapplicable, the trial court was perfectly capable of saying so. For example, in discussing the murder-for-pecuniary-gain factor, § 921.141(5)(f), the trial judge stated: "This paragraph does not seem to apply to the present case." App. 41.

[14] The plurality compounds this distortion by relying on this sentence in the Florida Supreme Court opinion in an effort to cast aside two of the aggravating circumstances that were applied to Barclay. See *ante*, at 946–947.

ing in Washington. It would have a hollow ring in the halls of that building if the sentences in these cases were not equalized." *Ibid.* The court ignored the differences between Barclay and Dougan which the jury had apparently found decisive. In addition to obscuring the proper focus on the individual offender, the court's invocation of principles of equal justice is particularly inappropriate in this case in light of the treatment of two of petitioner's codefendants, Evans and Crittendon. Both of these individuals participated in the murder of Stephen Orlando; indeed, Evans was the first to stab Orlando.[15] Moreover, after Orlando was murdered, Evans and Crittendon committed a second murder in the name of the Black Liberation Army *in which petitioner Barclay played absolutely no part.*[16] Yet, these two received prison sentences while Barclay was condemned to death.

## III

The procedures by which Elwood Barclay was condemned to die cannot pass constitutional muster. First, the trial judge's reliance on aggravating circumstances not permitted under the Florida death penalty scheme is constitutional error that cannot be harmless. Second, the Florida Supreme Court's failure to conduct any meaningful review of the death sentence deprived petitioner of a safeguard that the Court has deemed indispensable to a constitutional capital sentencing scheme.

### A

Under Florida law the imposition of the death sentence depends critically on the findings of statutory aggravating circumstances. First, for a defendant to be sentenced to death, the court must determine that *"sufficient* [statutory] aggravating circumstances exist." § 921.141(3)(a) (emphasis added). Second, the court must determine that there

---

[15] See Tr. of Resentencing Hearing 28 (testimony of Officer Thomas Reeves, supervising investigator for the murder of Stephen Orlando).

[16] *Id.,* at 6–8.

are "insufficient mitigating circumstances . . . to outweigh the aggravating circumstances." § 921.141(3)(b). The sentencer therefore not only weighs aggravating against mitigating circumstances, but even in the absence of mitigating circumstances the sentencer must weigh the statutory circumstances alone to determine their sufficiency.

Florida law clearly limits aggravating circumstances to those enumerated in the statute. § 921.141(5). Thus, "the specified statutory circumstances are exclusive; no others may be used for that purpose." *Purdy* v. *State*, 343 So. 2d 4, 6 (Fla. 1977). Accord, *Odom* v. *State*, 403 So. 2d 936, 942 (Fla. 1981); *Spaziano* v. *State*, 393 So. 2d 1119, 1122–1123 (Fla. 1981); *Miller* v. *State*, 373 So. 2d 882, 885 (Fla. 1979); *Provence* v. *State*, 337 So. 2d, at 786.[17]

Because Florida law prohibits reliance on nonstatutory aggravating circumstances, the trial judge's invocation of such circumstances in this case assumes special significance. In *Hicks* v. *Oklahoma*, 447 U. S. 343 (1980), this Court held that when a State has provided for the imposition of criminal punishment subject to certain procedural protections, it is not correct to say that the denial of one of those protections "is merely a matter of state procedural law." *Id.*, at 346. Eight Justices agreed that the defendant in such a case "has a substantial and legitimate expectation that he will be deprived of his liberty only to the extent" provided for by state law, and that such an interest is constitutionally protected. *Ibid.* See also *Vitek* v. *Jones*, 445 U. S. 480, 488–489 (1980).

The State of Florida has determined that a trial judge may not rely upon nonstatutory aggravating circumstances in sen-

---

[17] The Florida death penalty scheme manifestly differs from that in Georgia, as recently interpreted by the Georgia Supreme Court. See *Zant* v. *Stephens*, 462 U. S. 862 (1983). To begin with, Georgia permits the sentencer to rely on nonstatutory aggravating factors so long as at least one valid aggravating circumstance is identified. In addition, the Georgia scheme does not require any weighing of the sufficiency of the statutory aggravating circumstances, nor does it require a weighing of aggravating against mitigating circumstances.

tencing a defendant to death. The propriety of a death sentence imposed on the basis of nonstatutory aggravating circumstances is therefore not merely a matter of state law. A criminal defendant has a substantial and legitimate expectation that such circumstances will not be employed in sentencing him to death. The state-created protection cannot be arbitrarily abrogated, as it was here, without violating the Constitution.

Reliance on nonstatutory aggravating factors also runs afoul of this Court's "insistence that capital punishment be imposed fairly, and with reasonable consistency, or not at all." *Eddings* v. *Oklahoma,* 455 U. S. 104, 112 (1982). Fairness and consistency cannot be achieved without "'clear and objective standards' that provide 'specific and detailed guidance.'" *Godfrey* v. *Georgia,* 446 U. S. 420, 428 (1980) (plurality opinion), quoting *Proffitt* v. *Florida,* 428 U. S., at 253 (opinion of Stewart, POWELL, and STEVENS, JJ.), and *Woodson* v. *North Carolina,* 428 U. S. 280, 303 (1976) (plurality opinion).[18] Indeed, the Florida death penalty scheme was approved on the understanding that it required "an informed, focused, guided, and objective inquiry into the question whether [a defendant] should be sentenced to death." *Proffitt* v. *Florida, supra,* at 259 (opinion of Stewart, POWELL, and STEVENS, JJ.).

Because Florida limits consideration of aggravating circumstances to certain enumerated factors and because the weighing of those factors plays a crucial role in the sentencing process, fairness and consistency cannot be achieved if nonstatutory aggravating circumstances are randomly introduced into the balance. If one judge follows the law in sentencing a capital defendant but another judge injects into the weighing process any number of nonstatutory factors in aggravation, or if the same judge selectively relies on such circumstances, the fate of an individual defendant will inev-

---

[18] See also *Hopper* v. *Evans,* 456 U. S. 605, 611 (1982); *Lockett* v. *Ohio,* 438 U. S. 586, 601 (1978) (plurality opinion)

itably depend on whether on a given day his sentencer happened to respect the constraints imposed by Florida law. The decision to execute a human being surely should not depend on such potluck.

The plurality opinion departs from the Court's past insistence on consistency and fairness in the capital sentencing process. Under the plurality's view, the standard for review of a death sentence would apparently be "limited" to whether its imposition was "so unprincipled or arbitrary as to somehow violate the United States Constitution." *Ante*, at 947.[19] This standard is devoid of any meaningful content. It is simply tautological: a decision to impose the death sentence is not unconstitutional so long as it "is not so wholly arbitrary as to offend the Constitution." *Ante*, at 950–951. This implies that in death cases there are degrees of acceptable arbitrariness and that there exists some undefined point at which a sentence crosses over into the nether world of "wholly" arbitrary decisionmaking. I see no way to reconcile this standard with the requirements of the Constitution.

Nor can I agree that reliance on nonstatutory aggravating circumstances under the Florida scheme can be deemed harmless error. Florida law puts special emphasis on the finding of an aggravating circumstance.[20] Moreover, the sentencer always has discretion not to impose the death sentence in an individual case. Under these circumstances, we are "not at liberty to assume that items given . . . emphasis by the sentencing court did not influence the sentence which the prisoner [received]." *Townsend* v. *Burke*, 334 U. S. 736, 740 (1948). Protecting against the arbitrary im-

---

[19] Only four Justices agree that our review is limited in this fashion. JUSTICE STEVENS, with whom JUSTICE POWELL joins, would insist on more substantial procedural protections. See *ante*, at 959–960.

[20] Because the aggravating factors listed in the Florida statute are exclusive and because the sufficiency of these circumstances must always be weighed, the finding of each statutory aggravating circumstance has special significance under the Florida law, in contrast to the Georgia scheme. See *Zant* v. *Stephens, supra.*

position of the death penalty "must not become simply a guessing game played by a reviewing court in which it tries to discern whether the improper nonstatutory aggravating factors exerted a decisive influence on the sentence determination. The guarantee against cruel and unusual punishment demands more." *Henry* v. *Wainwright*, 661 F. 2d 56, 59–60 (CA5 1981). Where a life is at stake, the risk that a particular defendant has been selected for the wrong reason is unacceptable and incompatible with the Eighth and Fourteenth Amendments. See *Lockett* v. *Ohio*, 438 U. S. 586, 605 (1978). Given the "extraordinary measures" this Court has undertaken to guarantee "as much as is humanly possible" that a death sentence has not been imposed by "mistake," *Eddings* v. *Oklahoma, supra,* at 118 (O'CONNOR, J., concurring), a remand for resentencing is the least that is required.

## B

To avoid the arbitrary and capricious imposition of the death penalty, this Court has also stressed "the further safeguard of meaningful appellate review." *Gregg* v. *Georgia*, 428 U. S., at 195 (opinion of Stewart, POWELL, and STEVENS, JJ.). See *Proffitt* v. *Florida, supra,* at 253 (opinion of Stewart, POWELL, and STEVENS, JJ.); *Godfrey* v. *Georgia, supra,* at 429 (plurality opinion); *Zant* v. *Stephens,* 456 U. S. 410, 413–414 (1982). In his opinion concurring in the judgment, JUSTICE STEVENS notes the importance of this safeguard. *Ante,* at 973–974. In my view, the failure of the Florida Supreme Court to conduct any considered appellate review in this case requires that petitioner's death sentence be vacated.

If appellate review is to be meaningful, it must fulfill its basic historic function of correcting error in the trial court proceedings. A review for correctness reinforces the authority and acceptability of the trial court's decision and controls the adverse effects of any personal shortcomings in the

initial decisionmaker.[21] The Florida Supreme Court's review of Barclay's sentence utterly failed to fulfill this function. The court glossed over all of the errors in the sentencing order. Instead, it lauded the trial judge's performance, stating that Judge Olliff's "thorough analysis is precisely the type we would expect." 343 So. 2d, at 1271, n. 8. Given such encouragement, it is hardly surprising that in subsequent cases Judge Olliff has persisted in misapplying the Florida death penalty statute.[22]

The trial judge in this case plainly misapplied aggravating circumstances enumerated in Florida law. For example, he relied upon a conviction for breaking and entering to establish that petitioner had previously been convicted of a violent felony, even though the Florida Supreme Court has expressly held that such a crime does not satisfy the statutory factor. Similarly, the judge concluded that petitioner had created a great risk of death to many persons even though the homicidal act itself created no such risk. Faced with such findings, the Florida Supreme Court simply failed to consider whether they were consistent with Florida law. Conceivably it would have been possible to reconcile the findings in this case with other decisions which the Florida Supreme Court has rendered, although I doubt it. But if the process of appellate review means anything, it requires that the legal principles applied in one case be harmonized with settled law.

The plurality proceeds on the unfounded assumption that, although errors may have been made by the trial judge, the Florida Supreme Court nonetheless concluded that the errors were harmless. The plurality states:

> "[T]he Florida Supreme Court does not apply its harmless-error analysis in an automatic or mechnical fashion, but rather upholds death sentences on the basis of this

---

[21] See P. Carrington, D. Meador, & M. Rosenberg, Justice on Appeal 2 (1976); R. Pound, Appellate Procedure in Civil Cases 3–4 (1941).

[22] See Part II–B, *supra.*

analysis only when it actually finds that the error is harmless. There is no reason why the Florida Supreme Court cannot examine the balance struck by the trial judge and decide that the elimination of improperly considered aggravating circumstances could not possibly affect the balance." *Ante*, at 958.

The plurality's reliance on the harmless-error doctrine has no relation to the Florida Supreme Court's decision in this case. As one might surmise from the terminology, a "harmless-error" inquiry refers to a process by which an appellate court identifies legal errors and then determines whether they could have affected the judgment being reviewed. Here, the Florida Supreme Court did not identify *any* legal errors in the trial judge's sentencing order; it extolled the merits of the sentencing order. It therefore never reached the question whether the error was harmless. The Florida Supreme Court's decision in this case can readily be contrasted with those decisions in which it actually conducted a harmless-error analysis. For example, in *White* v. *State*, 403 So. 2d 331 (1981), cited *ante*, at 955, the court examined each of the aggravating circumstances upon which the sentencer had relied, explained the errors that the sentencer had committed, and then assessed the significance of the errors. 403 So. 2d, at 337–339.

The plurality's reliance on the harmless-error review conducted by the Florida Supreme Court in *other* cases is entirely misplaced. See *ante*, at 955, 958. When a defendant's life is at stake, it hardly suffices to tell him that some of the time the State's highest court does its job. *Every* defendant sentenced to death is entitled to meaningful appellate review, and where it is clear that the Florida Supreme Court has not provided such review, the death sentence should be vacated.

## IV

This case illustrates the capital sentencing process gone awry. Relying on factors not mentioned in Florida law and

statutory factors distorted beyond recognition, Judge Olliff overrode the jury's recommendation of life and sentenced petitioner to death. The Florida Supreme Court failed to conduct any meaningful review and instead showered the trial judge with praise for his performance. "Justice of this kind is obviously no less shocking than the crime itself, and the new 'official' murder, far from offering redress for the offense committed against society, adds instead a second defilement to the first." A. Camus, Reflections on the Guillotine 5–6 (R. Howard, trans. 1960). I therefore dissent.

JUSTICE BLACKMUN, dissenting.

Like JUSTICE STEVENS, *ante*, at 974, I cannot "applaud" the procedures and appellate analysis that have led to petitioner's death sentence. Like the Court, however, I cannot "applaud" the undertakings of petitioner and his companions that led to their victim's death in the Jacksonville area that night in June 1974. But when a State chooses to impose capital punishment, as this Court has held a State presently has the right to do, it must be imposed by the rule of law. JUSTICE MARSHALL's opinion convincingly demonstrates the fragility, in Barclay's case, of the application of Florida's established law. The errors and missteps—intentional or otherwise—come close to making a mockery of the Florida statute and are too much for me to condone. Petitioner Barclay, reprehensible as his conduct may have been, deserves to have a sentencing hearing and appellate review free of such misapplication of law, and in line with the pronouncements of this Court.

The final result reached by the Florida courts, and now by this Court, in Barclay's case may well be deserved, but I cannot be convinced of that until the legal process of the case has been cleansed of error that is so substantial. The end does not justify the means even in what may be deemed to be a "deserving" capital punishment situation.

I therefore dissent.