Lloyd Wayne HAMPTON, Petitioner–Appellant,

v.

Thomas PAGE, Warden, Menard Correctional Center, Respondent–Appellee.

No. 96–1571.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 22, 1996.

Decided Jan. 6, 1997.

Rehearing and Suggestion for Rehearing En Banc Denied March 6, 1997.

Michael B. Metnick, Charles Schiedel (argued), Thomas W. Patton, Metnick, Wise, Cherry & Frazier, Springfield, IL, for petitioner-appellant.

Steven J. Zick (argued), Office of the Atty. Gen., Criminal Appeals Div., Chicago, IL, for respondent-appellee.

Before FLAUM, RIPPLE, and EVANS, Circuit Judges.

TERENCE T. EVANS, Circuit Judge.

Lloyd Wayne Hampton pled guilty to three counts of first degree murder in 1990. He waived his right to a jury at the sentencing hearing and, under the two-phase procedure of Illinois' death penalty statute, the judge first found that Hampton was eligible for the death penalty and next that there were no mitigating factors sufficient to preclude a sentence of death. Section 9–1 of the Criminal Code of 1961 (Ill.Rev.Stat.1989, ch. 38, par. 9–1(b)(6) and (c)). A death sentence was imposed.

The three counts of murder to which Hampton pled guilty arose out of the death by asphyxiation of 69–year–old Roy (Jasper) Pendleton in the motel room in which he lived in Troy, Illinois. In a confession, Hampton said he encountered Pendleton at the motel—either in a hallway or the parking lot—and asked him for a ride to St. Louis, offering to pay for the gas if Pendleton obliged. Pendleton said no. He drove off alone but returned to the motel 10 minutes later and went into his room. A few minutes later Hampton knocked on Pendleton's door and asked if he could use his bathroom.[1] Pendleton, unfortunately, let him in.

Once inside, Hampton told the elderly Pendleton he was "very foolish" to allow him into the room. Pendleton must have soon realized just how foolish he was, for Hampton ordered him to lie down on his bed. Hampton then began going through Pendleton's

---

1. At some points in the record, such as at the offer of proof at the guilty plea hearing, there are statements that he asked to use the telephone.

belongings. He decided to steal a suitcase and a microwave oven. Hampton tied Pendleton's wrists and ankles and put tape over his mouth. Afraid he would get loose, Hampton also put tape over Pendleton's nose; then Hampton placed his hand over Pendleton's nose and mouth in an effort to suffocate him.

Under the impression that a dead body does not bleed (Hampton had done time in a Texas penitentiary, and the record suggests he picked up this tidbit of information while a guest of the Lone Star state), Hampton cut Pendleton's forehead in several places to see if he was dead. The wound bled, so Hampton placed his hand over Pendleton's mouth and nose for a few minutes longer. To check again to see whether Pendleton was dead, Hampton stabbed him in the throat. This time the wound did not bleed. The butcher knife was stuck in Pendleton's throat when the body was found.

After the murder, Hampton loaded the suitcase and the microwave oven into Pendleton's 1978 Pontiac and drove to Bugg's Lounge, a bar in nearby Livingston, Illinois, where he tried to cash a $500 check payable to Pendleton. He was not able to cash the check, but he did buy a round of beer for the customers in the bar. He then got back into the car and drove to a Texaco truck stop in Troy, where he was arrested on an unrelated charge. The arresting officers recognized the Pontiac as belonging to Pendleton. Hampton also had a $500 check made out to Pendleton and keys to two safe deposit boxes registered to Pendleton at the Troy Security Bank. After the officers confirmed the ownership to the car, one of them went to the motel and discovered Pendleton's body in the ransacked room.

Meanwhile, Hampton was questioned by Troy police officers. He admitted killing Pendleton and gave a videotaped statement detailing his commission of the crime. During the subsequent investigation, Hampton's fingerprints were lifted from the scene, saliva samples consistent with his were taken from cigarette butts found at the scene, and a spot of blood found on Hampton's pants was consistent with Pendleton's and inconsistent with Hampton's.

Hampton pled guilty to: intentional murder; murder in the course of a forcible felony, i.e., burglary; and murder in the course of a second forcible felony, armed robbery. He waived a jury trial at his capital sentencing hearing and was ultimately sentenced to death. At the hearing, Hampton said,

> I would say that should I be sentenced to death I am aware of the Supreme Court ruling in April concerning appeals filed in behalf of a condemned man, if he doesn't want those appeals and I would like to state for the record, although it has been pointed out to me that I have State appeals I have to go through, once those are over, I don't wish to have my case appealed by anyone.

Nevertheless, under the automatic review procedure of the statute, § 9–1(I), an appeal was filed on his behalf to the Illinois Supreme Court, which affirmed the death sentence in 1992. *People v. Hampton,* 149 Ill.2d 71, 171 Ill.Dec. 439, 594 N.E.2d 291 (1992); *reh'g denied,* June 25, 1992. He then filed a petition for postconviction relief seeking to set aside his guilty plea and sentence. The denial of that request was affirmed by the Illinois Supreme Court in 1995. *People v. Hampton,* 165 Ill.2d 472, 209 Ill.Dec. 189, 651 N.E.2d 117 (1995); *reh'g denied* May 30, 1995.

His federal habeas corpus petition pursuant to 28 U.S.C. § 2254 followed. Judge Paul E. Riley of the Southern District of Illinois denied the petition and Hampton appeals, raising what boils down to one issue: Did the Illinois Supreme Court find error in the trial court's reliance on an invalid aggravating factor but then affirm the death sentence without reweighing the aggravating and mitigating factors or conducting federal constitutional harmless error analysis?

The alleged invalid aggravating factor is that the murder was committed during the commission of a burglary. Because the motel room was Pendleton's residence, the charge should have been that the murder was committed during a "residential burglary." In 1990, Illinois' death penalty statute listed "burglary" as a factor making one eligible for the death penalty, but omitted "residential burglary," an omission since corrected. The resolution of this issue involves our role in evaluating a petition under § 2254,

the scheme set out in the Illinois death penalty statutes, and the interpretation of that scheme consistent with guidance from the United States Supreme Court.

Our role in evaluating petitions pursuant to § 2254 has recently changed. The Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214, among other things amends § 2254(d) to specify the appropriate treatment of legal determinations made by a state court:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Because we have found that federal habeas petitioners do not have legitimate expectations about the scope of collateral review and that the amendment does not regulate primary conduct—i.e., it does not change the rules defining or penalizing crime itself—it is applicable to a petition such as Hampton's. *Lindh v. Murphy*, 96 F.3d 856 (7th Cir.1996). We therefore look to the decision of the state court to see whether it is contrary to clearly established federal law "as determined by the Supreme Court of the United States" or whether it is based on an unreasonable determination of the facts.

The Illinois death penalty statute provides for a two-phase sentencing determination. Ill.Rev.Stat.1989, ch. 38, par. 9–1. The first phase is the eligibility phase. During this phase, the finder of fact, in this case the judge, determines whether a person is one whom the state may put to death. To be eligible for the death penalty, a person must have committed first degree murder and have been at least 18 years old at the time of the crime. Hampton was 36 years old when

he killed Pendleton, and the crime was, in fact, first degree murder. In addition to these elements, one of eight statutory aggravating factors must exist. The aggravating factor at issue in this case is § 9–1(b)(6), which in pertinent part provides for eligibility if the victim was killed in the course of another felony from among those specifically listed, which include armed robbery and burglary, but not, in 1990, residential burglary.

If a person is found to be eligible for the death penalty, the proceeding enters the second phase. At this phase the trier of fact must consider factors in aggravation and mitigation. The statute lists examples of mitigating factors and provides that aggravating factors "may include but need not be limited to those factors set forth in subsection (b)"— that is, factors establishing eligibility in the first phase of the proceeding.

Hampton argues that because the judge characterized burglary as an aggravating factor—when in fact he was not guilty of burglary, but rather of residential burglary—he was sentenced on the basis of an invalid aggravating factor. He then argues that Illinois is what is known in death penalty parlance as a "weighing state," one in which aggravating factors are weighed against mitigating factors. If this is true, he argues, then the scales were improperly balanced against him by the judge's reliance on an invalid aggravating factor. The respondent argues that it has never been decided that Illinois is a weighing state, but even if it were, the state appellate courts can either reweigh the aggravating and mitigating circumstances or apply a harmless error analysis. Hampton does not disagree with the latter proposition but says that the Illinois Supreme Court failed to do either.

The differences between a weighing and a non-weighing state are exemplified by the different sentencing schemes in Georgia and Mississippi. In Georgia, the fact finder is "not instructed to give any special weight to any aggravating circumstance, to consider multiple aggravating circumstances any more significant than a single such circumstance, or to balance aggravating against mitigating circumstances pursuant to any special stan-

dard." *Zant v. Stephens*, 462 U.S. 862, 873–74, 103 S.Ct. 2733, 2741, 77 L.Ed.2d 235 (1983). The finding that an aggravating circumstance exists does not play any special role "apart from its function of narrowing the class of persons convicted of murder who are eligible for the death penalty." *Id.* In contrast, in Mississippi, after the fact finder has found a defendant guilty of capital murder and has found that at least one statutory aggravating factor exists, it must weigh the statutory aggravating factor or factors against the mitigating evidence. *Stringer v. Black*, 503 U.S. 222, 112 S.Ct. 1130, 117 L.Ed.2d 367 (1992).

Illinois courts are the ones which will ultimately provide the definitive answer as to whether Illinois is a weighing state. The federal courts will not then be free to ignore the view of the highest court of the state as to the meaning of its own law: "It would be a strange rule of federalism that ignores the view of the highest court of a State as to the meaning of its own law." *Stringer*, at 235, 112 S.Ct. at 1139.

As it is, Illinois law is not quite silent on this issue. Even though it has not attached a label—in bold letters—to its capital sentencing scheme, neither has the Illinois Supreme Court remained entirely quiet. *See People v. Brownell*, 79 Ill.2d 508, 38 Ill.Dec. 757, 404 N.E.2d 181 (1980), *cert. dismissed*, 449 U.S. 811, 101 S.Ct. 59, 66 L.Ed.2d 14 (1980); *People v. Stewart*, 105 Ill.2d 22, 85 Ill.Dec. 241, 473 N.E.2d 840 (1984); *People v. Johnson*, 146 Ill.2d 109, 165 Ill.Dec. 682, 585 N.E.2d 78 (1991), *cert. denied*, 506 U.S. 834, 113 S.Ct. 106, 121 L.Ed.2d 65; and *People v. Todd*, 154 Ill.2d 57, 180 Ill.Dec. 676, 607 N.E.2d 1189 (1992), *cert. denied*, 510 U.S. 944, 114 S.Ct. 381, 126 L.Ed.2d 331.

In *Todd*, one of the defendant's claims was that his death sentence was invalid because the court relied on an invalid aggravating factor in finding him eligible for the death penalty. The court stated that such reliance was not material because "the defendant was independently eligible for the death penalty on the basis that the murder was committed in the course of a robbery and while attempting to commit aggravated criminal sexual assault." At 74–75, 180 Ill.Dec. 676, 607 N.E.2d 1189. Or in other words, as the court stated fairly clearly, "Illinois has a non-weighing statutory scheme to determine if someone is eligible for the death penalty." At 75, 180 Ill.Dec. 676, 607 N.E.2d 1189. The second phase of the proceeding is the point at which there is weighing and balancing: "The weighing and balancing of aggravating and mitigating factors takes place only during the second stage, after a defendant is found eligible for the death penalty and is done to determine whether the death sentence should in fact be imposed." At 75, 180 Ill.Dec. 676, 607 N.E.2d 1189. This stage, however, is different from the Mississippi scheme. In Mississippi and other weighing states such as Florida and Arizona, the fact finder is limited to the consideration of *statutory* aggravating factors. In Illinois, during the second phase of the sentencing hearing, the court is free to consider "any relevant and reliable evidence in aggravation and mitigation" including a factor, as in *Todd*, which may not be valid at the first stage. The use of nonstatutory factors does not violate the United States Constitution and may in fact not necessarily invalidate a death sentence even in a state in which the statute requires reliance on only those statutory factors enumerated. *Barclay v. Florida*, 463 U.S. 939, 103 S.Ct. 3418, 77 L.Ed.2d 1134 (1983).

The label—weighing or non-weighing—is not, as the Supreme Court reminds us, simply a matter of semantics. *Stringer*. It is arguable that, if Illinois is a weighing state and if in its analysis the Illinois Supreme Court found error but nevertheless affirmed without either reweighing the remaining factors or finding the error to be harmless, the Illinois Supreme Court could run afoul of *Clemons v. Mississippi*, 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990). *Clemons* determined that even in a weighing state, if an invalid aggravating factor has been relied on in the trial court, it is constitutionally permissible for the state supreme court to reweigh the aggravating and mitigating evidence and uphold a death sentence. Alternatively, it would be permissible for a state supreme court to find the error harmless beyond a reasonable doubt. If neither were done in this case, we could be compelled to

find that Hampton's sentence violates clearly established federal law from the Supreme Court, i.e., *Clemons.*

Our task is to determine whether the decision of the Illinois Supreme Court is contrary to, or an unreasonable application of, Supreme Court precedent, or whether it is based on an "unreasonable determination of the facts in light of the evidence" from the trial court. Given the nature of our inquiry and the State of Illinois' prerogative to choose the death penalty as a sentencing option, our answer must be "no."

■ We note at the outset that the United States Supreme Court has not mandated any particular statutory approach to capital punishment. *Spaziano v. Florida,* 468 U.S. 447, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984). Statutory aggravating circumstances are a constitutionally necessary part of the determination as to who is eligible for the death penalty. After that is accomplished, in selecting who, from among those eligible, will actually be put to death, "[w]hat is important ... is an *individualized* determination on the basis of the character of the individual and the circumstances of the crime." *Zant,* at 879, 103 S.Ct. at 2743–44.

To evaluate the issue before us we need to examine with some care exactly what the Illinois Supreme Court was saying in Hampton's direct appeal, *People v. Hampton,* 149 Ill.2d 71, 171 Ill.Dec. 439, 594 N.E.2d 291 (from here on, we refer only to the decision on Hampton's direct appeal, not the other postconviction proceedings in Illinois).

As to the eligibility phase, the Illinois Supreme Court declined to make the specific finding that Hampton's eligibility was improperly premised on murder in the course of a burglary. It said, however, that even if it made that finding, "the validity of defendant's eligibility would not be impaired because a separate, valid aggravating factor supported his eligibility." At 90, 171 Ill.Dec. 439, 594 N.E.2d 291. The court explained that Illinois' death penalty statute does not place special emphasis on any one aggravating factor nor does it "accord any special significance to multiple aggravating factors as opposed to a single aggravating factor." At 90, 171 Ill.Dec. 439, 594 N.E.2d 291. The

purpose of the eligibility phase, the court said, is to narrow the class of persons who are eligible for death. Hampton was eligible based on murder in the course of an armed robbery. The court concluded, "Thus, the possible impropriety in finding defendant eligible based upon murder in the course of a burglary would not affect his eligibility." At 91, 171 Ill.Dec. 439, 594 N.E.2d 291.

The upshot, it seems to us, is that the court found no error at the eligibility phase which could have affected the outcome of the proceeding. The trial court could not reasonably have found Hampton ineligible for the death penalty; he did, after all, meet one of the statutory conditions. Even if it could be said that error were found, a possible error which cannot affect the outcome of the proceeding is certainly harmless beyond a reasonable doubt.

■ Hampton does not contend that he was not involved in a murder in the course of an armed robbery. Therefore, he meets one of the statutory aggravating factors, i.e., § 9–1(b)(6). That section applies to a murder "in the course of" another felony if certain conditions—not contested here—are met and if

> the other felony was one of the following: armed robbery, robbery, aggravated criminal sexual assault, aggravated kidnapping, forcible detention, arson, aggravated arson, burglary, home invasion, ... or the attempt to commit any of the felonies listed in this subsection....

Hampton falls under this subsection of the statute, whether one or five or more of the listed crimes are applicable. Other factors include such things as that the victim was a peace officer, a fireman or correctional officer killed in the line of duty (sec. 9–1(b)(1)); that the victim was under 12 years of age and the crime was heinous (sec.9–1(b)(7)); and that there were two victims (sec.9–1(b)(3)).

The trial judge stated in a written order, in regard to the aggravating factor, that "the following statutory aggravating *fact* exists...." That fact was that the individual was killed in the "course of another felony (Burglary and Armed Robbery)...." He stated on the record at the hearing that he

"finds beyond a reasonable doubt that the following Statutory aggravating *factor* exists in relation to this offense. That aggravating factor being No. 6, the murdered individual was killed in the course of another felony, that being Burglary and Armed Robbery." [Emphasis added.] The trial judge referred in the singular to one statutory aggravating factor. Furthermore, the close relationship under the facts of this case between armed robbery and any species of burglary make the judge's reference to one felony a logical and reasonable one.

We can see no error—and, in truth, it appears that Hampton really urges none—in the finding that Hampton was eligible for the death penalty under these circumstances. Had burglary been the only felony cited, and assuming that what we have here is residential burglary, a separate crime which at the relevant time did not make one eligible for death, then, of course, the result of this case could be different.

■ That Hampton is properly eligible for the death penalty is not the important part of the inquiry. What of the second phase? Did the reference to burglary taint the weighing and balancing process? We find that it did not.

As to the second phase, the Illinois court emphasized that Hampton's conduct during the course of the crime could be considered in assessing whether aggravating factors existed:

> [E]ven if the burglary-based aggravating factor were not sufficient to render defendant eligible for the death penalty, the evidence did establish that defendant had engaged in conduct which constituted either burglary or residential burglary. The trial judge was therefore still fully entitled to consider the evidence underlying that factor in making his sentencing determination.

At 92, 171 Ill.Dec. 439, 594 N.E.2d 291. The fact of the commission of the crime "could properly be considered at the second phase of the sentencing hearing." At 92, 171 Ill. Dec. 439, 594 N.E.2d 291. Because burglary was not technically the crime committed, there is error at this phase of the proceeding.

What the Illinois Supreme Court said, however, was that the error made no difference because the judge was fully entitled to consider the evidence underlying the label.

■ An error which makes "no difference" can be nothing but harmless beyond a reasonable doubt. It is undisputed that the Illinois court in Hampton's case did not use the magic words "harmless beyond a reasonable doubt." That, standing alone, however is not dispositive. To find harmless error, a court must explain its reasoning, but the standard can be met without the court's "uttering the magic words 'harmless error.' " *Sochor v. Florida,* 504 U.S. 527, 541, 112 S.Ct. 2114, 2123, 119 L.Ed.2d 326 (1992) (O'Connor, J., concurring). What the Illinois court did is similar to what the Florida Supreme Court did in *Barclay v. Florida,* 463 U.S. 939, 103 S.Ct. 3418, 77 L.Ed.2d 1134 (1983). There, the death sentence was affirmed "only because it was clear that the Florida Supreme Court had determined that the sentence would have been the same had the sentencing judge given no weight to the invalid factor." *Stringer,* at 231, 112 S.Ct. at 1137. Here, the Illinois Supreme Court found that the sentence was not affected by the labeling error. "Residential burglary" was not a statutory factor, and "burglary" was not technically the crime committed. Nevertheless the underlying conduct could be properly considered and weighed by the court during the second phase of the hearing.

It is clear, as well, from the way the Illinois Supreme Court discussed other issues in the case, that the error was considered harmless. The court discussed other aggravating factors in addition to the statutory one: Hampton's lack of remorse and the brutality of the conduct, which included stab holes in the body and cigarette ashes and burn marks on the body. The court described the aggravating evidence in more than one instance as "overwhelming." *See* p. 102, 171 Ill.Dec. 439, 594 N.E.2d 291.

At this stage, as we have explained, an Illinois court can consider all factors in aggravation and in mitigation. And as we have also stated, the judge is free to consider the defendant's conduct during the course of the crime; therefore, even though the crime was

residential burglary and mislabeled as burglary and therefore not an eligibility factor at phase one, the sentencing judge was free during the second phase to consider the conduct, regardless of how it was labeled. The use of nonstatutory sentencing factors is not unconstitutional. *See Zant.*

In other words, there would be no impediment under either Illinois law or relevant federal law as set out by the Supreme Court to the judge having considered a residential burglary—labeled as such—at the second phase of the death penalty hearing. Contrasting the second phase with the first phase, we note again that if the judge, in 1990, had relied on conduct labeled "residential burglary" as an eligibility factor and that were the only felony committed in connection with the murder, there would be error and Hampton would not be eligible for the death penalty. If the judge had relied on conduct labeled "residential burglary" and conduct labeled armed robbery, Hampton would be *eligible* because one felony would have occurred in connection with the murder. At the second phase, if the judge had relied on an aggravating factor labeled "residential burglary," which in 1990 would have been a nonstatutory aggravating factor, there would be no error. The judge here was free to rely on a nonstatutory factor. This is an important difference between Illinois' statute and Mississippi's. In Mississippi, at the second phase, the aggravating factors must be statutory ones. Even if only statutory factors can be considered, however, if a court relies on an invalid factor the error can, nevertheless, be found to be harmless. *See Barclay.*

Of course, if the underlying conduct did not constitute residential burglary, i.e., if the evidence was not sufficient, for instance, then use of the factor would be error. *Zant.* The Illinois Supreme Court is well aware of this distinction and routinely applies the principle. *See People v. Hayes,* 139 Ill.2d 89, 151 Ill.Dec. 348, 564 N.E.2d 803 (1990), *cert. denied,* 449 U.S. 967, 111 S.Ct. 1601, 113 L.Ed.2d 664; *People v. Brownell,* 79 Ill.2d 508, 38 Ill.Dec. 757, 404 N.E.2d 181 (1980), *cert. dismissed,* 449 U.S. 811, 101 S.Ct. 59, 66 L.Ed.2d 14; *People v. Pitsonbarger,* 142 Ill.2d 353, 154 Ill.Dec. 562, 568 N.E.2d 783

(1990), *cert. denied,* 502 U.S. 871, 112 S.Ct. 204, 116 L.Ed.2d 163.

Viewed from this perspective, Hampton's position cannot be that the conduct properly characterized as residential burglary was an invalid factor at the second phase of the proceeding. Rather, he can state that residential burglary is not a statutory factor and that his conduct did not constitute burglary, but these are facts with which everyone agrees. His argument has to be that somehow the judge was overly impressed because he thought the factor was *statutory* rather than nonstatutory, and then that the Illinois Supreme Court did not do its job under *Clemons.*

■ However, it is not appropriate under Illinois law to place more emphasis on a statutory factor over a nonstatutory one merely because one is statutory and the other is not. *See People v. Terrell,* 132 Ill.2d 178, 138 Ill.Dec. 176, 547 N.E.2d 145 (1989), *cert. denied,* 495 U.S. 959, 110 S.Ct. 2567, 109 L.Ed.2d 749. And here there is absolutely no indication that the sentencing judge placed an improper emphasis on the statutory factors when evaluating the evidence. In fact, just the opposite occurred as the statutory factor is hardly mentioned.

The State presented, and relied on, evidence of nonstatutory factors. There was compelling evidence of another violent act Hampton committed. Deanna Schaefermayer testified that Hampton attacked her in California, an attack for which he was convicted of assault with a deadly weapon. She described Hampton striking her across the face; wrapping a leather strap around her neck; waving a butcher knife in front of her face; drawing the point of the knife down her body; holding the point or the blade of the knife against her throat; placing the tip of the knife in her vagina; plunging the knife into the mattress beside her, missing her by two inches. In short, she described Hampton terrifying her for seven or eight hours.

The State also presented certified copies of Hampton's substantial criminal record and asked the judge to take judicial notice of information in the presentence report, detailing a history of delinquency and criminality as well as statements Hampton made after

the killing that he smoked a cigarette and looked at the body, enjoying the feeling of having killed the old man. The State submitted a letter Hampton wrote to the police chief describing Pendleton as a "rotten bastard" and a "worthless piece of shit," and stating that his only regret was that he had not cut Pendleton's head off.

The State referred in its argument to signs of torture at the crime scene. Evidence indicated that Hampton had plunged the knife numerous times into the bed around Pendleton's head, acts, of course, similar to those Deanna Schaefermayer described. In addition, the State relied on testimony regarding ashes on the body and cigarette burns on the victim's eyes.

In contrast, at this phase of the proceeding the statutory factor was presented to the court as follows:

> Your honor, also pursuant to the procedure referred to by the Supreme Court we would ask at this time that the Court take Judicial Notice of the matters that we provided to the Court at the time of the plea, and also the matters in evidence presented to the Court in ... the first phase of the sentencing hearing and consider it.

The statutory factor received far less emphasis than the other, far more graphic and compelling nonstatutory factors. The perfunctory manner in which the factor was mentioned contrasts to the situation in *Clemons,* in which "the State repeatedly emphasized and argued the 'especially heinous' factor [the invalid factor in that case] during the sentencing hearing." 494 U.S. at 753, 110 S.Ct. at 1451.

█ Furthermore, as is implicit in our discussion, the judge—not a jury—was the decision-maker in Hampton's case. In a proceeding tried to the court there is a presumption that the judge considers only proper evidence. *Todd.* It seems to us that we can trust the judge as well not to be overly influenced if he thought Hampton's conduct amounted in part to burglary and thus a statutory factor as opposed to being conduct which constitutes residential burglary, which is not a statutory factor.

Also, as we have said, had the judge relied on a residential burglary in a situation in which there was insufficient evidence of residential burglary, then a more serious problem would have been presented. We are instructed that the reason a factor is invalid is an important consideration. *Zant.* But here, Hampton clearly committed a residential burglary.

Therefore we find that the Illinois Supreme Court, in evaluating Hampton's sentencing proceeding, did not put an unreasonable spin on the facts or unreasonably misapply clearly established federal law as determined by the Supreme Court of the United States. Lastly, although we have reviewed this case under the new law as construed in *Lindh,* the result of this appeal—affirmance of the district court's decision to deny Hampton's petition for habeas relief—would be the same under the old law. Therefore, we AFFIRM the district court's denial of the petition for a writ of habeas corpus.